Parker C. J.
delivered the opinion of the Court. This is a bill in equity to obtain possession of a bond given by Abraham Babcock to Joseph Woombell and Ann his wife, with a condition to convey to Ann, or to such person as she shall appoint, a certain parcel of land in Boston, on payment of the sum of 1385 dollars to Babcock, his executors and administrators. The bill states, that Joseph being an alien, the bond was taken in this form to avoid the consequences of his alienage in regard to real estate, that the bargain was made for and by him, and that so much of the consideration as has been paid, being about 900 dollars, has been paid by him or out of his funds. The plaintiffs then state, that Joseph, being indebted to them in the sum of 730 dollars, assigned to them the bond as security for that debt, and they pray that the bond may be delivered up to them, in order that they may be enabled to procure a conveyance to them of the estate, by means whereof they may obtain satisfaction of the debt.
Ann Woombell, in her answer, denies the principal facts stated in the bill, and says that she was married to Joseph in January, 1814 ; that before her marriage with him she had, in *218 her own right, certain household furniture, ¿nd money to the amount of 350 dollars ; that Joseph was worth nothing, and that by a marriage treaty between them, she was to hold to her own use all the property she was then possessed of, as well as all she might earn by her own industry after the mairiago, and that she had before the making of the bond acquired additional property by her own earnings ; that being desirous to invest what she had thus acquired, in the best and safest manner, she was, advised to purchase real estate, and that accordingly, in 1824, she made the bargain with Babcock which resulted in the bond ; that she paid down 384 dollars as part of the price, and that the residue was to be paid in five annual instalments, which she hoped to be able to pay from her own earnings and from the earnings of a son and daughter by a former marriage ; that Babcock promised to make the contract in such form as would best secure the property for her sole use, and that by his advice the bond in question was prepared and the name of Joseph Woombell inserted by his recommendation, and that Joseph took no part in the transaction and had nothing to do therewith ; that Joseph executed, with her, five promissory notes for the consideration unpaid, and that the bond was delivered by Babcock to her, and that it remained in her possession until delivered to her counsel, and she denies that it was ever in possession of Joseph ; that she has been enabled by her own exertions and those of her children, to lay up enough to pay two of the notes and part of another, with the interest, except that Joseph had voluntarily paid a small portion of the same ; that she had filed a libel for divorce against Joseph for the crime of adultery committed by him before the execution of the assignment, which was known to the complainants at the time, so that the taking of the assignment was in fraud of her rights. She then denies the power and right of Joseph to assign the bond to her prejudice. And in her answer to the amended bill, she further states, that a decree of divorce has been passed, so that the marriage bonds between her and Joseph are dissolved, and that at the time of making the bond by Babcock, Joseph was free of debt, and that he consented to the contract in pursuance of the ante-nuptial contract, and that he signed the promissory notes in evidence of his consent *219 She also states that Keith, one of the complainants, applied to her after the filing of her bill for divorce, to agree to mortgage the premises for the security of the debt due to the complainants, if he should procure an assignment of the bond ; which she refused, stating that it was her property. And she denies that any agreement was made for an assignment, before filing the libel, or that she knew of any such.
An important fact asserted in this answer and denied in the amended bill, is, the existence of an ante-nuptial contract, whereby she was to retain what personal property she may have been possessed of, and the fruits of her labor and industry, to her own separate use, contrary to the marital rights of Joseph, to whom by law all such property would appertain instantly upon the marriage. Such contract in relation to property actually belonging to her would not be extraordinary ; but in regard to the fruits of her industry after marriage, the evidence of such a contract should be very imposing, to establish the fact. That two very poor people, depending upon their labor for their living, should upon a contemplated marriage enter into an agreement, the effect of which would be, that the labor of one should go to the support of both, and that the labor of the other should be to the profit of that one only, would be a very unequal bargain, and hardly sustainable in a court of equity. It would be without consideration, and as it respects future creditors even, would be fraudulent, for the visible means of the husband in such case, upon which he would gain his daily credit, would be continually diminished by a secret, invisible consumption, which would keep him down and render him wholly unable to pay his debts. The books do not furnish such an ante-nuptial contract as this, nor does the evidence satisfactorily make it out. The ante-nuptial contract is wholly without proof, but rests on the unsupported answer of the respondent. Even her own children, by whose testimony another fact is attempted to be proved, deny all knowledge of such a contract ; and she herself slates, that it consisted merely in words which passed between her and her husband just before the marriage. It is supposed, however, that the bond itself and other evidence in the case, prove a settlement by her tiusband upon her, for the consideration of love and affection ; *220 and also, that all the money paid on the contract was her own, equitably at least, it consisting of savings by herself before the marriage, and of her own earnings afterward, upon an understanding that they were for her separate use.
We do not think it proved that she had any money on hand at the time of her marriage. The only evidence of it, beyond her own declaration, is the testimony of her two children, one of the age of eight and the other of six years at the time about which they testify, and their testimony taken fourteen or fifteen years after the fact. And even if these witnesses were credible, their testimony is too loose to be relied on. They may be believed when they say their mother had money, but when they undertake to judge from the heap only, that there were 300 or 400 dollars, the multiplying faculties of such children aided by recollection at so distant a period, can hardly gain confidence. Nor do we see reason to believe that she was in the way of earning to herself nearly 400 dollars, which have been paid on the contract, in addition to 360 paid at the time of its execution. On the contrary, taking the testimony altogether, we see more reason to believe that all the money has been paid from the proper funds of the husband. He was an industrious man, always employed either in fishing for lobsters, carrying about sand and water, as a watchman, keeping a fish-stall, having a pair of trucks, and one, two, and sometimes three horses. He must have earned a good deal, and all agree that what he did earn he gave to his wife to keep. She was a saving, woman and probably accumulated a considerable sum ; enough to make the payment. It may be that part of it was from what she called her own earnings ; which were neverthe less her husband’s property. So that if the design of Woom bell, in the transaction with Babcock, was to vest the property of the land in his wife, it was a mere voluntary settlement without consideration. But that this was his design was not sufficiently proved. Such a settlement, if made, is questionable as to its validity against even subsequent creditors.* In most of the cases cited in which such settlements were supported, there was either an ante-nuptial contract leading to them, or a *221 consideration by the relinquishment of some right or property of the wife : though we do not now determine, that a voluntary settlement, without a previous contract or a consideration, upon a wife or children, by a person free from debt, cannot stand.
The result of Chancellor Kent’s inquiries on this subject, is, that post-nuptial settlements may be good, if made upon a valuable consideration ; a fair and reasonable consideration; such as the wife’s relinquishing her own estate, or charging it with the husband’s debts. But the amount of the consideration must be such as to bear a reasonable proportion to the value of the thing settled, and when valid, such settlement will be sustained against existing creditors and subsequent purchasers. But he says, “ a settlement upon a meritorious consideration, or one not strictly valuable, but founded on some moral consideration, as gratitude, benevolence or charity, would be good against the settler and his heirs; but whether it would be good against creditors and purchasers, does not seem to be entirely settled, though the weight of opinion, and the policy of the' law, would rather seem to be against their validity in such a case.” 2 Kent’s Com. 146. And Atherley, whose treatise on this subject is considered able, is of opinion that such settlement cannot stand against even subsequent creditors. At any rate it ought to be clear that such settlement was intended, and not left to conjecture, as in this supposed settlement. How is this proved ? It is thought, by the bond itself. In the penal part the obligor acknowledges himself indebted to Joseph and Ann Woombell. The condition recites, that the obligor had agreed to sell to them jointly ; *222 that they had paid him 385 dollars, and had given their joint notes to him to the amount of 1000 dollars, in five divisions. The obligation is, if they or either of them pay all taxes, &c. that after payment of the notes, he will, at the request of Ann in writing, notwithstanding her coverture, convey to her, her heirs and assigns, or to such person as she shall appoint in writing, the land' described in the bond.
Now it is argued, that this form of the contract shows mani-. iestly, that J. Woombell’s intention was to settle this property on his wife. There is quite as much to justify a contrary inference. Such an intention ought to have been clearly express ed, and there should be no circumstances existing to accoum for such a contract consistently with a want of such intention. Whereas the fact is admitted, that Woombell was an alien ; so that there was a reason for not making the conveyance to him. Besides, he was an ignorant man, unacquainted with the forms of conveyance or obligation. His wife took, as she states, the whole control of the transaction. He was in the kitchen while the business was transacting in the parlour ; was called in merely to sign the notes, whereby he bound himself to pay 1000 dollars in five years; to get an estate, not to himself, but to his wife, and her, not his, children. That a laboring man should thus give up all he had, and pledge all his earnings for five years to come, to make a settlement upon his wife voluntarily and with a knowledge of what he was about, is in the highest degree improbable. It is too unreasonable to be admitted, without stronger evidence than any which this case ex hibits. It ought rather to be supposed, and we do suppose, that he intended his wife should be his agent in taking the bond and estate, on account of his inability as an alien, and his incapacity in other respects, and he ought not to be bound down by a contract thus obtained, to keep himself in utter poverty for the sake of building up an estate for his wife.
Upon these considerations we are of opinion, that the interest and property of the bond were, at the time of its execution, and continued to be, in Joseph Woombell, until it was assigned to the complainants, who now have the equitable interest therein ;[1] and therefore there must be a decree, that il *223 oe delivered over to the complainants, to be enforced for their use and benefit so far as may be required for the security and payment of the debt due to them from Joseph Woombell. And as the bonds of marriage between Joseph and Ann have been dissolved by a decree of divorce for adultery committed by him, upon application to this Court, or by agreement of Joseph, there may be a decree, that the value of the real estate, which, according to the bond, is to be conveyed to the assignees, over and above the amount of the debt due to them, shall be paid over to Ann to her sole use, or shall otherwise stand charged for her maintenance, according to such decree as may hereafter be obtained for her.
After the filing of the original bill and answer, the plaintiffs moved for an order that Ann Woombell should leave with the clerk of the court, the bond admitted by her to be under her control, with liberty to the plaintiff to inspect it and take a copy. This was opposed, on the ground, that by the constitution a subject is not to be compelled to “ furnish evidence against himself.” But the Court said that that had reference to criminal cases ; and that the plaintiffs, claiming an interest in the bond as assignees, were entitled to see it. The motion was granted.

 D. A. Simmons, for the plaintiffs, cited on this subject, Ramsden v. Hylton, 2 Ves. sen. 308; Beaumont v. Thorpe, Belt’s Supplem. to Ves. sen 25 *221 Reade v. Livingstone, 3 Johns. Ch. R. 488; Taylor v. Jones, 2 Atk. 600; Bayard v. Hoffman, 4 Johns. Ch. R. 450; Damon v. Bryant, 2 Pick. 411; Sterry v. Arden, 1 Johns Ch. R. 261; Atherley on Marriage Settlements, 188; Bean v. Smith, 2 Mason, 252.
Aylwin, for the defendant, cited Rich v. Cockell, 9 Ves. 375; Tyrrill v. Hope, 2 Atk. 562; Doe v. Routledge, Cowp. 711; Lister v. Lister, 2 Vern 67; Bach v. Andrew, ibid. 120; Campion v. Cotton, 17 Ves. 264; Washburn v. Sproat, 16 Mass. R. 449; Slanning v. Style, 3 P. Wms, 336; Sexton v. Wheaton, 8 Wheat. 229. [See also Wadsworth v. Havens, 3 Wendell, 411; Gilmore v. North Amer. Land Co. 1 Peters’s Circ. C. R. 460, 464; Thompson v. Dougherty, 12 Serg. & Rawle, 448; Howe v. Ward, 4 Greenleaf, 195; 1 Story’s Comm, on Eq. 348.]

 See Commonwealth v. Manley, 12 Pick. 176