The opinion of the Court was delivered by
O’Neall, J.
Three questions have been argued in the appeal in this case:
1st. Was the defendant, Stevens, a competent witness for the complainant, upon such parts of the case as did not seek to make him liable ?
2d. Is the sale of the land void, on account of the alleged fraudulent conduct of the creditor, Stevens, and the Sheriff?
3d. Is the gift of the slaves to Mrs. Sarter good, as against the complainant ?
1. Modern decisions have very much relaxed the rule of exclusion of witnesses, on account of interest. The inclination is now to permit a witness to be sworn, in every case, where he has not a certain and direct interest, either in the record or the event. In all other cases, the weight of the objection is to his credit, and not to his competency. A witness who has an interest, but is offered to testify against it, is generally competent. A party to a record in the Court of Law cannot, in general, be a witness. An exception, however, was allowed even to this rule. In a suit by a public officer, where he had no interest in the event, and was not even liable for costs, he was held to be a competent witness for the party for whose use the suit was brought. Price vs. Gregory, 4 McC., 261.
*129 In Equity, where the proceeding, by bill and answer, places the Court at once in possession of the supposed relative rights and liabilities of the parties, it has long been allowed to examine either a complainant or a deféndant, where there were more than one, to any point in the cause in which he had no interest. In the case of Neilson vs. McDonald, 6 Johns., Ch. 204, the Chancellor held that a co-defendant, charged with combination in a fraud, and who might be liable for costs,-but against whom no particular relief is prayed, might be a witness for the other defendants. If this rule-be correct, as between parties offering one of their own number as a witness, it must be obvious that there is a great deal less force in the objection to its application, where the complainant offers a defendant. In this case he risks both his interest and prejudice against himself. All the temptations to perjury arise from the interest which the witness has against .the complainant. If he is able to overcome these, or if the complainant is willing to hazard their influence, there can be no objection, on the score of interest, to the witness. The only objection which can then arise, is that of privilege to a party in a cause: and this is, first, a personal privilege, and, second, one of interest. If the party, however deeply he may be interested, is willing to be sworn against his own interest, and the party opposed to him in interest is willing to risk his testimony, none of the other parties in the cause can make the objection for the witness. If, however, the witness is interested in the result, and makes the objection to being sworn, it would be irresistible. For if the proposed witness is a defendant, his answer is the only means of obtaining the knowledge confined to his own breast. It is hence, in the English practice, that a defendant is required to answer every pertinent interrogatory put to him in the bill, and, if he fails to do so, his answer may be excepted to for insufficiency. If he is a complainant, his discovery can only be obtained by a cross bill. In the case under consideration, it appears that Stevens had no interest to support the sale of the land : or, if he had, he does not appear *130 to have made the objection to being sworn. For, from the Chancellor’s decree, it appears that he was sworn, and testified to many facts, having a very important bearing on the case. I have no doubt, therefore, that he was a competent witness for the complainant.
2. The circumstances attending the sale of the land make out a case, at which, if the- debtor had not been a party consenting to, and acquiescing in it, every one would exclaim as a gross fraud and oppression upon him. His acquiescence and combination in the fraud upon his own rights does not make it less a fraud upon the rights of his creditors. Indeed, it strengthens their claims to relief: for, in this point of view, it may be regarded as a shift of an insolvent debtor, to delay or hinder his creditors from the collection of their debts. I know of no fraud which more deserves reprehension, than a fraudulent abuse of the process of execution, for the purpose of either unjustly sacrificing a debtor’s property, or protecting it for him, against other debts.
It is true, that every creditor has a right to demand and coerce payment in specie; but this, like all other legal rights, must be exercised in good faith, and not with' a view of sacrificing a debtor’s property, and thus obtain an unconscientious advantage. Every one to whom a debt is due has a right to be paid ;' but if this legal right is used to obtain the debtor’s property, at enormous sacrifices, this might be considered as a fraudulent abuse of the rights of the creditor and debtor, and might avoid the transaction. A legal right must be always used, and not abused. If the party who desires to be paid in specie gives reasonable notice, or if he shows that a necessity, on his part, existed to demand" it, either might negative the presumption of .fraud arising from so unusual a requisition. But in the case before us, the defendant, -Stevens, without any apparent necessity, purchased from the Bank of the State of South-Carolina a judgment, which they we're not pressing, against the defendant, Reuben Sims. He gave for it his own note, in payment of *131 which, bank notes of that, or any other of the banks of this State would hare been taken. There was, then, no necessity existing, on his part, to demand payment in specie. So soon as he became the proprietor of the judgment, he lodged the execution, with orders to sell immediately and for specie. This was a short notice; but if the Sheriff had advertised the sale to be for specie, it might have availed to protect them both from legal censure. • As it was, however, the Sheriff gave no such notice until the day of sale, and this failure of duty, on his part, must also attach to the creditor: for, in effecting the sale, the Sheriff is the agent of the creditor, the debtor, and the purchaser, and his acts may, more or less, affect them all. Before the Sheriff can sell, he must advertise lands for twenty-one days. To be a compliance with the law, his advertisement must not only contain a description of the property to be sold, and the names of the parties, but also the terms of the sale. Look to the object for which the Sheriff is required to advertise, and it will at once be perceived that I have not stated too broadly the constituent parts of his advertisement. Not only the debtor and creditor are to be apprised of the sale, but also the whole community, that they may attend and compete with each other for the purchase of the property to be sold,, To enable persons to buy, they ought to be apprised of the terms on which the property is to be sold. The usual terms of a Sheriff’s sale are cash. The term cash has two meanings, one a payment in current bills, the other in specie. The first is the popular, the latter the legal meaning. The former has, in common parlance, entirely supplanted the latter. An advertisement that the sale was to be for cash, would be understood by every one to be foie current bills. A sale made for specie, under such a notice, was anything else than fair. It was, in fact, a sale without being advertised, for one of the most important conditions of the sale was not disclosed in the advertisement. In this respect, the sale was void, for want of authority on the part of the Sheriff to sell. The usual presumption is, that the Sheriff, or any *132 other public officer, has done his" duty, and this presumption would sustain his acts, until the contrary was shown. But it may be rebutted, as was fully done in this case. It is the Sheriff’s duty, when he sells for specie, to say so in his advertisement, so that every one may be fully informed. It might, perhaps, be enough on this question to stop here, and say that, as the Sheriff sold without having properly advertised, that he sold without any authority, and that, therefore; the purchaser took nothing by his bid. But this would be, perhaps, unsatisfactory to the parties, and they might complain of being made the victims of a new rule.
I am satisfied the sale is void, on account of the fraud: and on this part of the case, I might refer to Neilson vs. McDonald, 6 Johns., Ch. 201, as a perfectly analogous case to this. They are, indeed, in some particulars, the same case, and, as against the creditor, Stevens,‘and the Sheriff, that case would decide this. As a general rule, it may be laid down, that any act on the part of the auctioneer, or persons causing the sale, which prevents competition among the bidders at an auction, will vitiate the sale. 4 Johns, Ch. 254. Let us apply this rule to this case. The first thing calculated to prevent competition, was that the terms were unusual, and not made known until the sale. None could buy, at such a sale, but the creditor, or such as had been apprised of the ternas in sufficient time to prepare for it, or such as, by sheer accident, happened to have specie. Few could, therefore, compete for the property to be sold — probably not one-tenth of those who might have desired to do so. The next fact, showing that competition was actually prevented, and that the property sold for not more than one-third of what it otherwise would, is that the complainant, at the sale, offered $3,000 for the land, in bills of the Bank of the State. This bid was refused, and the land knocked off to the defendant, Rice, at $1,000. The third and last fact necessary to be fioticed is, that Stevens himself, on his own examination, said that he directed the land to be sold for specie, with the *133 view of buying it for less than it was worth. Take all these circumstances together, and they present a case, not only of oppression in a public sale, but of fraud, which would soil the ermine of justice, if it could escape with impunity.
If no one was concerned in the sale but the creditor and Sheriíf, I might here stop the investigation ; but, at that sale, the defendant, Rice, was the purchaser, and it is contended for him, that, as he has denied, in his answer, the fact of combination, that he must be protected in his purchase. If the first position which I have stated, that the Sheriíf sold without legally advertising, and, consequently, without' authority, be correct, then the defendant, Rice, cannot' avail himself of the purchase. But, waiving that for the present, let us examine how far he is to be affected by the fraud in the sale, supposing him to be an innocent purchaser. This question is, I am free to confess, not without its difficulties. In Robson vs. Calze, 1 Doug., 228, the distinction is pointed out by Lord Mansfield, “ that although a third -person should not be punished for the fraud of another, he shall not avail himself of it.” In the conclusion of his opinion, he puts “ the case upon the broad ground, that a certificate is void if obtained by fraud, though without the knowledge of the bankrupt.” In the Attorney-General vs. Vigor, 8 Ves., 283, it is said, “ If a deed is absolutely void at law, for covin, it may be treated as a nullity.” The defendant, Rice, claims title to the land, through the Sheriff’s sale; can he avail himself of it, though fraudulent, to sustain his title ? It is true, he' is the .defendant, and if the case sought to punish him, he could say the fraud was another’s, and not mine, and therefore I cannot be punished. But the claim seeks to subject him to no loss: he must be refunded the amount, paid, and interest; it seeks to prevent him from sétting up-his purchase, under a fraudulent sale, to the injury of the complainant. I can perceive no difference between1 his claim, under the Sheriff’s deed, and the bankrupt’s claim to be discharged, under his certificate, in Robson vs. Calze. Both *134 were conceived in sin and brought forth in iniquity. I must confess that I never have been able to see the reason why a purchaser, under a vicious sale, should be protected. If a Sheriff sells without authority, or in such a way as to be contrary to law, the debtor, I should suppose, might elect either to make the Sheriff responsible for his improper conduct, and thus confirm the sale, or to pursue and recover his property, and leave the purchaser to his remedy over against the Sheriff. A person can only-be 'deprived of his property according to the forms of law; and if these have been violated, the right still remains in him. If the Sheriff fraudulently sells a debtor’s property, his sale, it is conceded, is void. If the sale is void, must not his deed to the purchaser be void also 1 It is his sale which authorizes him to convey, and if he has not made a legal sale he has no authority. The sale of the Sheriff was, in this case, covinous and void at law, and I apprehend the sale and deed are both nullities. So far, I have considered the Sheriff and Rice as strangers to each other in law. But the Sheriff is his agent in the sale and the purchase, and it will not be pretended that the ■ principal can protect himself by the fraud of his agent. Placing the case, therefore, on this footing, there can be no doubt that Rice’s purchase must fail, if the sale is fraudulent. If the defendant, Rice, had notice of the fraud, it is clear that he cannot be protected. The terms of sal© were unusual, and were enough to put him on an inquiry why they were so. Any thing which is enough to put a party on an iiiquiry is usually noticed in Equity. But I think he had actual notice. I understand from the case, that the complainant, when the land was offered for sale, proposed to give for it $3,000 in bank bills. This bid was refused, unless it should be paid in specie. After this, the defendant, who purchased for one-third of this sum, could not pretend that he did not know that advantage was taken, and a sale forced, on unusual terms, to obtain the debtor’s property at less than it was worth.
The possession of the land by the defendant, Sims, since the *135 sale, is a strong circumstance of fraud, and, nine times out of ten, is almost conclusive evidence of it. It has been, in some degree, explained in this case; but when .coupled with the other circumstances of the case, it goes far to sustain the conclusion that the sale was made by the combination of the creditor, the debtor and the Sheriff, to cover the property for the debtor. I, therefore, conclude that the sale of the land must be set aside.
3. This question is one of more vital importance to the community than any other. As was well observed, a' lecture on honesty here, is worth more, perhaps, than in any other place : for it furnishes the means to make men 'honest, even against their wills, and, although there may not be much virtue in legal honesty, yet there is a good deal of utility in it. If all could act in strict conformity to Law, it would be carrying us back in reality to the fancied golden age of poetry. Such, however, cannot be the case, while man is fallible and human institutions imperfect. The nearest we can approach to certainty, in any one branch of jurisprudence, we have by so much improved the condition of man in society.
I concur fully with the late presiding judge of this Coiut, that the statutes against fraudulent conveyances are only declaratory, or rather, in affirmance, of the Common Law. Any gift or conveyance which, by their provisions, is void, is so also at the Common Law. Fraud can never be the predicate of a v Common Law right — it is always its destruction.
Upon the question, whether a gift, unaccompanied by actual possession, as against subsequent creditors, without notice, is good, different opinions have been entertained by distinguished jurists in this State and elsewhere. But I propose to shew, by a review of all our own decided cases, that we are free to answer the question in the negative, if we choose to do so; and that this answer is more in unison with reason, justice, and the majority of our decided cases, than one in the affirmative would be. In the order of time, the first case, in which the legal effect óf a *136 voluntary conveyance against creditors was fully considered, was the case of Kid vs. Mitchell, 1 N. & McC. 334. In that case the gift was supported, but the - fact of notice was fully brought home to the defendant.. There is, therefore, in that case, nothing repugnant to the conclusion, that if notice had not been proved, it could not have prevailed. Indeed that case, as I shall hereafter shew, goes far to sustain the doctrine for which I am contending. Smith vs. Littlejohn, 2 McC., 362, was a case, where the parent at the time of the gift was not in debt. He contracted the debt subsequently, and sold the slave to pay it. The fact of explicit notice of the gift was proved. In Hudnal vs. Teasdall, 1 McC., 227, and the same case reported under the name of Hudnal vs. Wilder, 4 McC., 294, the main question was on the fact of notice to the purchaser. In the case of Madden vs. Day. 1 Bail. 337, Judge Nott stated this question, and gave fully his'opinion, that the . gift, where the possession remained in the donor, would not be good against a subsequent creditor, who had given credit on the faith of the property. I tried the case of Madden vs. Day, on the circuit, and instructed the jury, that a bonajide gift by a parent to his child, where the donor retained possession, would be good against subsequent creditors. This, I thought then, was in compliance with previous adjudications, although my own opinion was then in full accordance with that expressed by Judge Nott. Believing that case to have in some degree settled the law according to my own opinion, I cheerfully and heartily adopted Judge Nott’s dictum as a correct exposition of the law. At Spring term, 1830. was tried the case of Howard vs. Williams, (1 Bail. 575,) in which my ingenious and learned brother Evans, maintained that a gift from a parent to a child, if not made with a view to future indebtedness, was good against subsequent creditors without notice, notwithstanding the parent retained the possession. That question was, however, not necessary to the decision of the case. For I had instructed the jury, that, as against existing debts, a gift, when the donor retained *137 possession, could not prevail: and if, on the final winding up of the donor’s affairs, it was necessary to sell the property given to pay both the existing and subsequent debts, that the gift was void, and it was for this supposed misdirection, that a new trial was ordered. The subsequent cases of McElwee vs. Sutton, 2 Bail, 128, 361; Cordery vs. Zealy, 2 Bail. 205 ; Izard vs. Izard, (Bail. Eq. 228,) and Brock vs. Bowman, decided at this term, have overruled the doctrine of Howard vs. Williams, on the point necessary to its decision. In Cordery vs. Zealy, 2 Bail. 205, and Brock vs. Bowman, it is distinctly said, that where a gift is made, and the donor retains possession, it will be void against subsequent creditors without notice.
In Sexton viz. Wheaton, 8 Wheat. 229, C. J. Marshall has reviewed all the English authorities on this subject, and comes to the conclusion, that a voluntary conveyance is good against subsequent creditors. But it will be seen, on looking into that case, and the English cases, that they are all decided upon conveyances, actually executed, and, in the last case, the fact of the deed being recorded, is relied upon as a circumstance, to shew that credit could not have been given upon the faith of the property conveyed. A parol gift by delivery, but possession retained by the donor, cannot be found, as a class of cases, in the Courts of any country but our own. It hence, is, perhaps more important, that we should adopt some rule which will compel them to operate fairly on the community. Possession, all our books tell us, is prima facie evidence of right to personal property. In this State, it is almost the only evidence of title to slaves. Is it to be tolerated, that one should be the ostensible owner of a slave for years; obtain credit upon this apparent ownership; and, when misfortune overtakes him, that he should be permitted to turn round and say to his creditor: it is true you trusted me on the faith of this property, but I was not the owner; some ten or fifteen years ago, I gave it to my child 1 If this is allowed, I know of no greater fraud which can be committed on a creditor. In the language of Judge Nott, in Madden vs. Day, “ a *138 vendor's continuing in possession of personal property is usually considered as furnishing such evidence of fraud, as will render the property liable to the claims of creditors, even against a bona fide purchaser for valuable consideration ; and the principle must apply more strongly in the case of a volunteer. The only circumstance which can be relied on to repel the presumption, is, that the possession of a parent of the property of his infant child, of whom he is the natural guardian, is not inconsistent with the nature of the claim set up by the child. But if it may be evaded by so flimsy a pretext, as by conveying to one under his own roof, and for whom he is bound to provide, the rule is of but little value.” j The retention of possession after an absolute sale or gift, as between adults, furnishes a presumption in law, that either is fraudulent. Can the relation of a parent and a minor child diminish the presumption? The parent is bound to take care of the property of the child, it is said. Be it so. His duty is not to treat it as his own: he should either separate it from the mass of his property, or permit the fact of right ownership to be known^f If he does not do it: who is to be injured — the donee or the creditor? I think the former. To constitute a good gift, the donor must not only give, but the donee must accept. In the case of a minor child, the parent gives to and accepts for him. As between them, this makes the gift capable of being enforced; but until possession is actually delivered, or the child demands possession, the gift is not strictly consummated. For until then, the donee may dissent from it. It is true, it is not likely he would: or, to use a cant phrase, that “ he would look a gift horse in the mouth.” But still, I think, in strict law, we are at liberty to regard parol gifts? • where the donor retains possession, as executory, until the donee is legally capable of assenting and does assent. In this view, it is plain, that it would be bad against all debts existing before possession is actually delivered, or claimed ' after attaining to maturity. For until then, it is no gift. But a different notion-has so long prevailed in relation to parol gifts, that I will not *139 rest the argument here. If one is in possession 'of property as his own, and obtains credit on the faith of it, it will be liable to his debts, is the rule broadly laid down. In Kid vs. Mitchell, 1 N. and McC. 340, it is said, “ neither is a deed, fraudulent because the vendor continues in possession ; it is only against creditors and subsequent purchasers without notice.” Why is it that it is void against them % The same authority tells us, “ The ground on which a voluntary conveyance is held void against creditors, is, that he who has trusted another on the faith and credit of the visible property which he has in possession, shall not be defeated of his debt by a transfer without consideration; and the same principle applies in the case of subsequent creditors and purchasers, without notice, when the vendor continues in possession.” This dictum of the wise Judge, who delivered the opinion, put the case on its true footing. The question is not, was the gift good in its beginning; but between a volunteer and creditor, which is to be preferred ? and that question must be always answered by another: was credit given on the faith of the property 1 If it was, it is a plain fraud on the creditor, although the donee may be innocent of it: and in such a case a valuable consideration must always prevail over a good consideration. In Hudnall vs. Wilder, 4 McC. 306, Judge Nott says, “ A toan continuing in possession, is regarded as to creditors or subsequent purchasers, as the owner against the most solemn unconditional deed in the world.” This, I take it, is the rule of the law, to which, it is true, there may be exceptions, but none of the exceptions can apply when a creditor or purchaser is uninformed of a previous voluntary conveyance. I come, therefore, to the conclusion, that a gift to a minor child, when the donor retains the possession, is void against subsequent creditors, without notice. This view of the law of the case, subjects the slaves in the possession of the defendant, Sarter, to the complainant’s debt.
The slaves sold and purchased by the defendants, Ashford, Stevens and John Sims, appear to have sold for their full value: and as the complainant does not press to set that sale aside, *140 although it is manifest, that it is a fraudulent one, that part of the decree which dismissed the bill as to the said slaves is affirmed.
It is ordered and decreed, that so much of Judge Harper’s decree as dismisses the bill as to the sale of the land, and the slaves in the possession of John S. Sarter, be reversed, and that, upon the complainant, within three months from the date of the decree, depositing with the Sheriff of Union District, the sum of one thousand dollars, with the interest from the day on which it. was sold to, and purchased by defendant Rice, to the time of the deposite, as the bid of the complainant, the said sale be set aside, and the deed from the Sheriff to the defendant Rice, be cancelled; that the said Sheriff, as soon after as practicable, do advertize and sell the said land under the complainant’s execution against the defendant, Reuben Sims, commencing the said sale at the bid deposited by the complainant; and out of the proceeds of the said sale, that the said William Rice be refunded his purchase money and interest, and that the balance of the purchase money be applied to the payment of the debts of the defendant, Reuben Sims, according to their legal priorities.
It is further ordered and decreed, that the defendant, William Rice, do account for and pay over to the Commissioner of this Court, the rents and profits of the said tract of land, to be applied by him to the judgment debts of Reuben Sims, according to their legal priorities.
It is also ordered and.decreed, that the slaves in the bill mentioned, in the possession of the defendant, John S. Sarter, are liable to the debts of Reuben Sims, contracted before he delivered the actual possession, and that the same be sold by the complainant on a credit of twelve months, purchasers giving the usual securities, and that the proceeds, when collected, be applied to the satisfaction of the judgment debts of Reuben Sims, obtained on contracts made by him before he delivered the possession to the said defendant, according to their legal priorities.
*141 Let the defendants, Reuben Sims and Edward Stevens, pay the costs in this case, except the costs of the defendant, John S. Sarter, which will be paid out of the sale of the slaves herein mentioned, and ordered to be sold.
Martin, J., concurred.

Decree reversed.