Marshall, Ch. J.,
 

 delivered the opinion of the court, and, after stating the case, proceeded as follows : — The allegation, that the house in question was purchased with a view to engaging in mercantile speculations, and conveyed to the wife for the purpose of protecting it from the debts which might be contracted in trade, being positively denied, and neither proved by testimony, nor circumstances, may be put out of the case.
 

 The allegation, that the defendant, Sally, aided in practising a fraud on the plaintiff, or in creating or giving countenance to the opinion, that the defendant, Joseph, was more wealthy than in truth he was, is also expressly denied, nor is there any evidence in support of it, other than the admission in her answer, that she had seen a letter written by him to the plaintiff, in the Autumn of 1809, in which he gave, she thought, too flattering a picture of his circumstances. This admission is, however, to be taken with the accompanying explanation, in which she says, that she had dissuaded him, she had hoped successfully, from sending the letter in its then form. This fact does not, we think, fix upon the wife such a fraud as ought to impair her rights, whatever they may be. The plaintiff could not know that this letter was seen by the wife, or in any manner sanctioned, by, or known to her. He had, therefore, no right to suppose, that there was any waiver of her interest, whatever it might be, nor had he a right to assume anything aSainst ber, or ber claims, in consequence *of his receiving this letter. The case is very different from one in which the wife herself makes a misrepresentation, or hears and countenances the misrepresentation of her
 
 *105
 
 husband. The person who acts under such a misrepresentation, acts under his confidence in the good faith of the wife herself. He has a right to consider that faith as pledged ; and if he is deceived, he may complain that she has herself deceived him. But in this case, the plaintiff acted solely on his confidence in the husband. If he was deceived, the wife was not accessory to the deception. She contributed nothing towards it. When she saw and disapproved the letter written by her husband, what more could be required from her, than to dissuade him from sending it in that form? Believing, as we are bound to suppose she did, that the letter would be altered, what was it incumbent on her to do ? All know and feel, the plaintiff as well as others, the saeredness of the connection between husband and wife. All know, that the sweetness of social intercourse, the harmony of society, the happiness of families, depend on that mutual partiality which they feel, or that delicate forbearance which they manifest towards each other. Will any man say, that Mrs. Wheaton, seeing this letter, remonstrating against it, and believing that it would be altered, before sending it, ought to have written to this stranger in New York, to inform him, that her husband had misrepresented his circumstances, and that credit ought not to be given to his letters? No man will say so. Confiding, as it was natural and ‘■'amiable in her to confide, in his integrity, and believing that he had imposed on himself, and meant no imposition on another, it was natural for her to suppose, that his conduct would be influenced by her representations, and that his letter would be so modified as to give a less sanguine description of his circumstances. We cannot condemn her conduct.
 

 A wife who is herself the instrument of deception, or who contributes to its success, by countenancing it, may, with justice, be charged with the consequences of her conduct. But this is not such a case ; and we consider the rights of Mrs. Wheaton as unimpaired by anything she is shown to have done. Had the plaintiff heard this whole conversation, as stated in the answer; had he heard her express her disapprobation of the statements made in the letter, and dissuade her husband from sending it, without changing its language ; had he seen them separate, with a belief on her part, that the proper alterations would be made in it, he would have felt the injustice of charging her with participating in a fraud. That act cannot be criminal in a wife, because it was not communicated, which, if communicated, would be innocent. Admitting the representations of this letter to be untrue, they cannot be charged on the wife, since she disapproved of them, and believed that it would not be sent, in its exceptionable form. So much is a wife supposed to be under the control of her husband, that the law in this district will not permit her estate to pass by a conveyance executed by herself, until she has been *examined, apart from her husband, by persons in whom the law confides, and has declared to them, that she has executed the deed freely, and without constraint. It would be a strange inconsistency, if a court of chancery were to decree, that the mere knowledge of a letter, containing a misrepresentation respecting her property, should produce a forfeiture of it, although she had not concurred in its statements, had dissuaded her husband from sending it, and believed he had not sent it.
 

 Without discussing the conduct of Mr. Wheaton in this transaction, it is sufficient to say, that it cannot affect the estate previously vested in his wife. The cause, therefore, must depend on the fairness and legality of the con
 
 *106
 
 veyance to her. The allegation, that the purchase-money was derived from her private individual funds, is supported by circumstances which may disclose fair motives for the conveyance, but which are not sufficient to prove, that the consideration, in point of law, moved from her. It must, therefore, be considered as a voluntary conveyance; and, if sustained, must be sustained on the principle, that it was made under circumstances which do not impeach its validity, when so considered.
 

 The bill does not charge Mr. Wheaton with having been indebted in January 180V, when this conveyance was made. The fact, that he was indebted, cannot be assumed. Indeed, there is no ground in the record for assuming it. The answers aver, that he was not indebted, and they are not contradicted by any testimony in the cause. *His inability to pay his debts in 1811 or 1812, is no proof of his having been in the same situation, in January 180V. The debts with which he was then overwhelm ed3 were contracted after that date. This conveyance, therefore, must be considered as a voluntary settlement made on his wife, by a man who was not indebted at the time. Can it be sustained against subsequent creditors ?
 

 It would seem to be a consequence of that absolute power which a man possesses over his own property, that he may make any disposition of it which does not interfere with the existing rights of others, and such disposition, if it be fair and real, will be valid. The limitations on this power are those only which are prescribed by law. The law which is considered by the plaintiff’s counsel as limiting this power, in the case at bar, is the statute of 13 Eliz., ch. 5, against fraudulent conveyances, which is understood to be in force in the county of Washington. That statute enacts, that “for the avoiding and abolishing of feigned, covinous and fraudulent feoffments,” &c., “ which feoffments,” &c., “ are devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent, to delay, hinder or defraud creditors and others, of their just and 1; svful actions,” &c., “not only to the let or hindrance of the due course and execution of law ana justice, but also to the overthrow of all plain dealing, bargaining, and chevisance between man and man. Be it, therefore, declared,” &c., “ that all and every feoffment,” &c., “ made to, or for, any intent or purpose before ^ec^are<^ and expressed, shall be *from henceforth deemed and taken (only as against that person,” &c., “ whose actions,” &c., “ shall or might be in any wise disturbed,” &e.) “ to be clearly and utterly void.”
 

 In construing this statute, the court have considered every conveyance, not made on consideration deemed valuable in law, as void against previous creditors. With respect to subsequent creditors, the application of this statute appears to have admitted of some doubt. In the case of
 
 Shaw
 
 v.
 
 Standish
 
 (2 Vern. 326), which was decided in 1696, it is said by counsel, in argument, “ that there was a difference between purchasers and creditors, for the statute of 13 Eliz. makes not every voluntary conveyance, but only fraudulent conveyances, void as against creditors ; so that, as to creditors, it is not sufficient to say,- the conveyance was voluntary, but must show they were creditors, at the time of the conveyance made, or, by some other circumstances, make it appear, that the conveyance was made with intent to deceive or defraud a creditor.” Although this distinction was taken in the case of a subsequent purchaser, and was, therefore, not essential in the cause which was before the court, and is advanced only by counsel in argument,
 
 *107
 
 yet it shows, that the opinion, that a voluntary conveyance was not absolutely void as to subsequent creditors, prevailed extensively.
 

 In the case of
 
 Taylor
 
 v.
 
 Jones
 
 (2 Atk. 600), a bill was brought by creditors to be paid their debts out of stock, vested by the husband, in trustees, for the benefit of himself for life, of his wife for life, and, afterwards, for the benefit of children. Lord *Haedwicke decreed the deed of trust to be void r*244 against subsequent as well as preceding creditors. There are cir- L cumstances in this case, which appear to have influenced the chancellor, and to diminish its bearing, on the naked question of a voluntary deed being absolutely void, merely because it is voluntary. Lord Haedwicke said, “ now, in the present case, here is a trust left to the husband, in the first place, under this deed; and his continuing in possession is fraudulent as to the creditors, the plaintiffs.” His Lordship afterwards says, “ and it is very probable, that the creditors, after the settlement, trusted Edward Jones, the debtor, upon the supposition that he was the owner of this stock, upon seeing him in possession.” This case, undoubtedly, if standing alone, would go far in showing the opinion of Lord Haedwicke to have been, that a voluntary conveyance would be void against subsequent, as well as preceding creditors ; but the circumstances, that the settler was indebted at the time, and remained in possession of the property, as its apparent owner, were certainly material; and although .they do not appear to have decided the cause, leave some doubt, how far this opinion should apply to cases not attended by those circumstances.
 

 This doubt is strengthened by observing Lord Hardwicke’s language, in the case of
 
 Russell
 
 v.
 
 Hammond.
 
 His Lordship said, “though he had hardly known one case, where the person conveying was indebted at the time of the conveyance, *that the conveyance had not been fraudulent, yet that, to be sure, there were cases of voluntary settlements that were not fraudulent, and those were, where the persons making them were not indebted at the time, in which case, subsequent debts would not shake such settlements.” It would seem, from the opinion expressed in this case that
 
 Taylor
 
 v.
 
 Jones
 
 must have been decided on its circumstances.
 

 The cases of
 
 Stillman
 
 v.
 
 Ashdown,
 
 and of
 
 Fitzer
 
 v.
 
 Fitzer and Stephens,
 
 reported in 2 Atkyns, have been much relied on by the appellant; but neither is thought to establish the principle for which he contends. In
 
 Stillman
 
 v.
 
 Ashdown,
 
 the father had purchased an estate, which was conveyed jointly to himself and his son, and of which he remained in possession. After the death of the father, the son entered on the estate, and the bill was brought to subject it to the payment of a judgment against the father, in his lifetime. The chancellor directed the estate to be sold; and one moiety to be paid to the creditor, and the residue to the son. In giving his opinion, the chancellor put the case expressly on the ground, that this, from its circumstances, was not to be considered as an advancement to the son. He says, too, “ a father, here, was in possession of the whole estate, and must, necessarily, appear to be the visible owner of it; and the creditor too would have had a right, by virtue of an
 
 elegit,
 
 to have laid hold of a moiety, so that it differs extremely from all the other cases.” *In the same case, the chancellor lays down the rule which he supposed to govern in the case of voluntary settlements. “It is not necessary,” he says, “ that a man should be actually indebted, at the time of a voluntary settlement, to make it
 
 *108
 
 fraudulent; for, if a man does it with a view to his being indebted at a future time, it is equally fraudulent, and ought to be set aside.” The real principle, then, of this case is, that a voluntary conveyance to a wife, or child, made by a person not indebted at the time, is valid, unless it were made with a view to being indebted at a future time.
 

 In the case of
 
 Fitzer
 
 v.
 
 Fitzer and Stephens,
 
 the deed was set aside, because it was made for the benefit of the husband, and the principal point discussed was the consideration. The Lord Chancellor said, “ it is certain, that every conveyance of the husband, that is voluntary, and for his own benefit, is fraudulent against creditors.” After stating the operation of the deed, he added, “ then, consider it as an assignment which the husband himself may make use of, to fence against creditors, and, consequently, it is fraudulent.” This case, then, does not decide, that a conveyance to a wife, or child, is fraudulent against subsequent creditors, because it is voluntary, but because it is made for the benefit of the settler, or with a view to the contracting of future debts.
 

 The case of
 
 Peacock
 
 v.
 
 Monk,
 
 in 1 Vesey, turned on two points. The first was, that there was a proviso to the deed, which amounted to a power of revocation, which, the chancellor said, *had always been considered as a mark of fraud ; and, 2. That, being executed on the same day with his will, it was to be considered as a testamentary act.
 

 In the case of
 
 Walker v. Burrows
 
 (1 Atk. 94), Lord Hardwicke, adverting to the stat. 13 Eliz., said, that it was necessary to prove, that the person conveying was indebted, at the time of making the settlement, or immediately afterwards, in order to avoid the deed. Lord Haedwioke maintained the same opinion in the case of
 
 Townshend
 
 v.
 
 Windham,
 
 reported in 2 Vesey. In that case, he said, “if there is a voluntary conveyance of real estate, or chattel interest, by one, not indebted at the time, though he afterwards become indebted, if that voluntary conveyance was for a child, and no particular evidence or badge of fraud to deceive or defraud subsequent creditors, that will be good; but if any mark of fraud, collusion, or intent to deceive subsequent creditors, appears, that will make it void; otherwise not, but it will stand, though afterwards he becomes indebted.” A review of all the decisions of Lord Haedwioke, will show his opinion to have been, that a voluntary conveyance to a child, by a man, not indebted at the time, if a real and
 
 bond fide
 
 conveyance, not made with a fraudulent intent, is good against subsequent creditors.
 

 The decisions made since the time of Lord Haedwioke maintain the same principle. In
 
 Stephens
 
 v.
 
 Olive
 
 (2 Bro. C. C. 90), Edward Olive, by deed, dated the 7th of May *1774, settled his real estate on himself for life, remainder to his wife for life, with remainders over for the benefit of his children. By another deed, of the same date, he mortgaged the same estate to Philip Mighil, to secure the repayment of 500i. with interest. On the 6th of March 1775, he became indebted to George Stephens. This suit was brought by the executors of George Stephens, to set aside the conveyance, because it was voluntary, and fraudulent as to creditors. The master of the rolls held, “ that a settlement, after marriage, in favor of the wife and children, by a person not indebted at the time, was good against subsequent creditors “ and that, although the settler was indebted, yet, if the debt was secured by mortgage, the settlement was good.”
 

 
 *109
 
 In the case of
 
 Lush
 
 v.
 
 Wilkinson,
 
 the husband conveyed a leasehold estate in trust, to pay, after his decease, an annuity to his wife for life, and after her decease, the premises charged with the annuity for himself and his executors. A bill was brought by subsequent creditors, to set aside this conveyance. The master of the rolls sustained the conveyance, and, after expressing his doubts of the right of the plaintiff to come into court, without proving some antecedent debt, said, “ a single debt will not do ; every man must be indebted for the common bills for his house, although he pays them every week; it must depend upon, this, whether he was in insolvent circumstances at the time.”
 

 In the case of
 
 Glaister
 
 v.
 
 Hewer
 
 (8 Ves. 199), where the husband, who was a trader, purchased *lands, and took a conveyance to himself and wife, and afterwards became bankrupt and died, a suit was brought by the widow, against the assignees, to establish her interest. Two questions arose : 1. Whether the estate passed to the assignees, under the statute of 1 James I., ch. 15 ; and if not, 2. Whether the conveyance to the wife was void as to creditors. The master of the rolls decided both points in favor of the widow. Observing on the statute of the 13th of Eliz., he said, that the conveyance would be good, supposing it to be perfectly voluntary ; “for,” he added, “though it is proved, that the husband was a trader, at the time of the settlement, there is no evidence, that he was indebted at that time ; and it is quite settled, that, under that statute, the party must be indebted at the time.” On an appeal to the Lord Chancellor, this decree was reversed, because he was of opinion, that the conveyance was within the statute of James, though not within that of Elizabeth.
 

 In the case of
 
 Battersbee
 
 v.
 
 Farrington and others
 
 (1 Swanst. 106), where a bill was brought to establish a voluntary settlement in favor of a wife and children, the master of the rolls said, “ no doubt can be entertained on this case, if the settler was not indebted at the date of the deed. A voluntary conveyance by a person not indebtéd, is clearly good against future creditors. That constitutes the distinction between the two statutes. Fraud vitiates the transaction ; but a settlement, %not fraudulent, by a party not indebted, is valid, though voluntary.” From these cases it appears, that the construction of this statute is completely settled in England. We believe, that the same construction has been maintained in the United States. A voluntary settlement in favor of a wife and children, is not to be impeached by subsequent creditors, on the ground of its being voluntary.
 

 We are to inquire, then, whether there are any badges of fraud attending this transaction which vitiate it. What are those badges ? The appellant contends, that the house and lot contained in this deed, constituted the bulk of Joseph Wheaton’s estate, and that the conveyance ought, on that account, to be deemed fraudulent. This fact is not clearly proved. We do not know the amount of his estate in 180V ; but if it were proved, it does not follow, that the conveyance must be fraudulent. If a man, entirely unin-cumbered, has a right to make a voluntary settlement of a part of his estate, it is difficult to say how much of it he may settle. In the case of
 
 Stephens
 
 v.
 
 Olive,
 
 the whole real estate appears to have been settled, subject to a mortgage for a debt of
 
 5001,
 
 yet, that settlement was sustained. The proportional magnitude of the estate conveyed may awaken suspicion, and
 
 *110
 
 strengthen other circumstances; but, taken alone, it cannot be considered as proof of fraud. A man who makes such a conveyance, necessarily impairs 01,<3<⅜ an& '¾ openly done, warns those with whom he deals not to trust him too far ; but this is not fraud.
 

 Another circumstance on which the appellant relies, is the short period which intervened between the execution of this conveyance and the failure of Joseph Wheaton. We admit, that these two circumstances ought to be taken into view together ; but do not think that, as this case stands, they establish a fraud. There is no allegation in the bill, nor is there any reason to believe, that any of the debts which pressed upon Wheaton, at the time of his failure, were contracted before he entered into commerce in 1809, which was more than two years after the execution of the deed. It appears, that, at the date of its execution, he had no view to trade. Although his failure was not very remote from the date of the deed, yet the debts and the deed can in no manner be connected with each other ; they are as distinct as if they had been a century apart. In the case of
 
 Stephens
 
 v.
 
 Olive,
 
 the debt was contracted in less than twelve months after the settlement was made ; yet it could not overreach the settlement. These circumstances, then, both occurred in the case of
 
 Stephens
 
 v.
 
 Olive,
 
 and were not considered as affecting the validity of that deed. The reasons why they should not be considered in this case as indicating fraud, are stronger than in England. In this district, every deed must be recorded in a place prescribed by law. All titles to land are placed upon the record. The person who trusts another on real property, *knows where he may apply to ascertain the nature of the title held by the person to whom he is about to give credit. In this case, the title never was in Joseph Wheaton. His creditors, therefore, never had a right to trust him, on the faith of this house and lot.
 

 A circumstance much relied on by the appellant, is the controversy which appears to have subsisted, about that time, between the post-office department and Wheaton. This circumstance may have had some influence on the transaction ; but the court is not authorized to say that it had. The claim of the post-office department was not a debt. On its adjustment, Wheaton was proved to be the creditor instead of debtor. It would be going too far, to say, that this conveyance was fraudulent, to avoid a claim made by a person who was, in truth, the creditor, where there is nothing on which to found the suspicion, but the single fact that such a claim was understood to exist.
 

 The claim for the improvements stands on the same footing with that for the lot. They appear to have been inconsiderable, and to have been made before these debts were contracted.
 

 Decree affirmed.
 
 (a)
 

 (a)
 

 Mr. Atherley, in his able treatise on the Law of Marriage and other Family Settlements, controverts, on principle, the doctrine, that a voluntary settlement is good against subsequent creditors, if the settler wasmot indebted at the time he made it, although he admits, that it is the law in England, as established by the decisions of the courts of equity, pp. 280-37, 175, 176, 209-20. See also Reade v. Livingston, 3 Johns. Ch. 481.