## DANIEL PARKMAN *versus* JOHN WELCH *et al.*

Where a bill in equity makes specific charges of fraud, and the answer contains only a general denial of all fraud, the charges are not to be taken to be true, and the defendant estopped to disprove them, but the plaintiff should except to the answer for want of particularity.

In order to entitle a creditor to impeach a conveyance of land as fraudulent when made without a valuable consideration or on a secret trust, it is not necessary that the grantor should have been actually insolvent at the time of the conveyance; it is sufficient if he was deeply indebted.

Under *St.* 13 *Eliz. c.* 5, a conveyance made upon a secret trust and with fraudulent intent, may be avoided as well by subsequent as by previous creditors.

If a mortgage be made of two parcels of land as security for the payment of a sum of money, and the right in equity to redeem one parcel be transferred to A. and the right to redeem the other to B., and the mortgagee afterwards release A.'s parcel from the mortgage, B., on redeeming, cannot compel A. to contribute, but he is entitled to have an abatement of such a proportion of the sum due on the mortgage as the value of A.'s parcel bore, at the time of the execution of the mortgage, to the value of both parcels.

DEWEY J. delivered the opinion of the Court. This is a *July 1st.* a bill in equity, in which the plaintiff seeks to redeem certain parcels of land situated in Federal street, in the city of Boston, being lots No. 42 and 46. The bill prays for an account of moneys due on the mortgages, and also that Welch may be ordered to contribute in aid of the plaintiff in the redemption of one of the mortgages set forth in the bill, and for such other and further relief as the nature and circumstances of the case shall require.

The leading facts in the case, as stated in the bill and admitted by the answer, are the following: Benjamin Crombie, on the 2d of August, 1824, was seised in fee of three parcels of land, being lots No. 42, 44 and 46, in Federal street, and being thus seised, on the same day, conveyed in mortgage lot No. 42 to Peter C. Brooks, to secure the payment of a sum of money ; and on the 8th of February, 1825, Crombie conveyed by another mortgage, the lots No. 42, 44 and 46 to Brooks, to secure the payment of a further sum of money. On the 1st of March, 1827, Crombie conveyed the equity of redemption of lot No. 44 to the defendant Welch. On the 18th of February, 1829, Crombie conveyed to Welch nine several parcels of real estate, including lots No. 42 and 46

Welch, on the 8th of July, 1829, reconveyed to Crombie all the lands conveyed to him in February 1829, except lots No. 42, 46, and a lot in Brighton street. On the 5th of January, 1833, Welch conveyed to C. D. Coolidge, by deed of warranty, the lot No. 44. On the 8th of August, 1834, Brooks assigned both of his mortgages to Welch. Welch conveyed to the defendant M'Intyre, on the 25th of August, 1834, his interest in the equity of redemption of lots No. 42 and 46.

At the Court of Common Pleas holden on the first Tuesday of July, 1834, the plaintiff recovered judgment against Crombie for $5363·40 damages, and $9·65 costs. An execution having issued upon this judgment, it was levied on the equity of redemption of lots No. 42 and 46, and the same, being exposed for sale at public auction, according to law, was purchased by the plaintiff and conveyed to him by the officer by deed bearing date the 8th of October, 1834.

On the 10th of December, 1834, Welch conveyed to the defendant Adams the mortgage which included lots No. 42, 44 and 46, and on the same day Adams executed and delivered to Welch a release of the lot No. 44 from the mortgage.

Upon the preceding statement of the paper title of the parties, it is very apparent, that if the various conveyances were valid in law, no title remained in Crombie at the time of the execution of the plaintiff, and he could have no interest in the mortgaged premises which would authorize him to maintain this bill, inasmuch as the deed of Crombie to Welch, of February 18th, 1829, on the face of it conveyed all the interest of Crombie in the lots No. 42 and 46. The plaintiff, fully aware of this, seeks to avoid the deed of February 1829, from Crombie to Welch. He charges in his bill, that this deed was made by fraud and covin between the parties, that Crombie was deeply indebted at the time of the making of this deed, and that the same was on a secret trust for the benefit of Crombie, and so may be avoided by his creditors. Welch, in his answer, denies that the deed was fraudulent, and alleges that the same was made *bonâ fide* and not under any secret trust.

The plaintiff must also avoid the effect of the deed of Welch to M'Intyre, of August 25th, 1834, and for this purpose he alleges, that this conveyance was received by M'Intyre with

full knowledge of the fraudulent character of the deed from Crombie to Welch, and with the view of aiding Welch to place this property beyond the reach of the creditors of Crombie.

M'Intyre denies all such knowledge, or any participation with Welch in any design to defraud the creditors of Crombie.

The defendant Welch admits, in his answer, " that he believes Crombie was not solvent in February 1829, although that fact would depend upon many circumstances, such as pressure or abundance n the money market, the rise and fall of real and personal es.ate, and other similar causes operating upon a man who had a large amount of property in his possession, and owed a large amount of debts."

The deposition of Crombie is in the case. Also certain articles of agreement between Welch and M'Intyre executed on the 3d of February, 1834.

Several questions arise in the present case.

1. Was the conveyance of Crombie to Welch of February 1829, a *bonâ fide* transaction, or was it made upon a secret trust between the parties, inconsistent with the face of the deed ?

2. Was the deponent M'Intyre so far cognizant of the nature and object of that conveyance and the real character of Welch's interest under it, that it may be avoided in his hands, he claiming under the deed of Welch to him executed August 25th, 1834 ?

3. Does the *St.* 13 *Eliz. c.* 5, avoid conveyances made upon a secret trust and with a fraudulent intent, as well in favor of subsequent as previous creditors ?

4. Is there a legal claim for contribution as to lot No. 44, against those holding the mortgage, originally including lots No. 42, 44 and 46 ?

Our first inquiry is as to the validity of the conveyance of Crombie to Welch. Was this a *bonâ fide* transaction between the parties, or was there a secret trust inconsistent with the face of the deed ?

In the argument of this question, the counsel for the plaintiff suggested, that in reference to the evidence of fraud, whatever fact was particularly and specifical; charged in the bill, and not

as specifically and directly denied in the answer, although the answer contained a general denial of all fraud, might be taken to be true, and the defendant be estopped from denying it. We are not aware that such a rule has been adopted in this Commonwealth. Objections to an answer for want of particularity and fullness have been usually taken by exceptions to the sufficiency of the answer, and this seems to us to be the proper mode. It is doubtless true, that to give a defendant the full benefit of an answer so far as to require more than one witness to control it, the answer must be direct and specific as to the matter charged in the bill. So in weighing the whole evidence in the case, the fact that the defendant only answers generally, denying the fraud, will operate against him wherever the bill charges him with particular acts of fraud. The circumstance that the defendant omits to deny the facts in the same explicit manner that they are charged, raises the presumption that the appeal to his conscience has been somewhat effectual, and that he proposes shielding himself under a denial of the legal effect of his actions, rather than to deny under oath the particular acts imputed to him. His explicit denial in the answer, of the particular facts charged, would, as before stated, give him the important privilege of requiring of the plaintiff more than one witness to disprove them ; and this privilege, in ordinary cases, it may be presumed, he would not forego but for substantial reasons.

Having disposed of this preliminary question, we proceed to state the views of the Court as to the validity of the deed from Crombie to Welch, of February 18th, 1829. It seems to us, very clearly, that this deed is fraudulent and void in law. There are many of the badges of fraud connected with this conveyance. The facts in the case and the inferences of law, entirely control the general declaration of Welch, that the sale was not fraudulent. Without attempting to enumerate all the circumstances of fraud developed in the course of these negotiations between the parties, we can say that we do not find any sufficient evidence of a legal consideration for the deed of February 1829. It is not even alleged by the defendant Welch, in his answer, that any money was paid, any notes discharged, or any accountable written promise given by him to Crombie for

the value of the premises conveyed. It is said in the answer to have been taken " as security for indebtedness," but for what indebtedness is left entirely uncertain. No satisfactory proof is made of any debts existing in favor of Welch against Crombie as 'early as the date of the conveyance, that could have been a sufficient consideration for it. We are the more confirmed in this view of the case, from the circumstance that as early as July 8th, 1829, a reconveyance of all the parcels of land described in the deed of February 1829, except the lots 42, 46, and the Brighton street lot, was made by Welch to Crombie, without the payment of any money, or valuable consideration therefor, so far as we are informed by the answer of Welch. The three lots retained by Welch, as is stated by him, were retained " as security for advances, debts, liabilities and negotiations between them, and more especially in relation to certain transactions concerning a wharf in Sea street, and loans thereon, and hazards and advances made and other risks taken by said Welch for said Crombie." The consideration as above stated by Welch, is obviously other and different from that stated as the original consideration of the conveyance of February 1829. The deed under consideration is apparently a sweeping conveyance, embracing many distinct parcels of land. It was suggested by the counsel for Welch, that it did not include all the real estate of Crombie, as it appears that on the 28th of January, 1830, he conveyed to one E. H. Derby other parcels ; but there is no evidence that the title in these lots was not acquired subsequently to his deed to Welch. The fact of the execution of a bill of sale of the household furniture made at or about the same time by Crombie to Welch, corroborates the view we have taken of the deed of February 1829, as having been intended to cover all the attachable property of Crombie.

As to the indebtedness of Crombie, it was sufficiently shown by the answer of Welch. Actual insolvency of the grantor is not required to render his conveyance, when made without consideration, void as against creditors. Such a doctrine has been sometimes advanced as respects creditors whose debts accrued after the making the conveyance, but this is not supported by the authorites. All that is necessary to entitle a creditor

*Parkman*
*v.*
*Welch.*

to impeach a deed as fraudulent, when made without a valuable consideration, or on a secret trust, is that the grantor be deeply indebted. Welch admits in his answer, that Crombie owed a large amount of debts, at the time of making the conveyance to him, which brings the case clearly within the rule before stated. That this conveyance was intended as an absolute one, passing the property over for the sole benefit of Welch as, on the face of it, it purports to have been, is not claimed by Welch in his answer. There must have been some secret trust incompatible with the validity of this deed. If further evidence were required to satisfy our minds on this question, we might refer to the deposition of Crombie, which, if entitled to full credit, furnishes all the requisite facts to establish the allegation in the bill, that this conveyance was made under a secret trust. We are aware that the credit of Crombie is somewhat impeached. He is however a competent witness, and his testimony entitled to some consideration, corroborated as it is by the other evidence in the case. So, too, we think that the want of particularity in the answer to this bill, charging as it does fraud and propounding so many direct and specific questions to the defendant Welch, may properly be allowed to operate in satisfying our minds, in connexion with the other facts in the case, of the existence of a secret trust between the parties to the deed of February 1829. Upon the whole evidence, we are satisfied that this conveyance was clearly fraudulent and void in law.

2. Can it be avoided as to M'Intyre, who holds under a deed from Welch ?

Prior to the levy of execution of the plaintiff, Welch had conveyed this right in equity to the defendant M'Intyre, and if M'Intyre was a *bonâ fide* purchaser without notice of the nature of the title held by Welch, the conveyance to M'Intyre would be effectual to pass to him the title, divested of the taint of fraud, and would place the property beyond the reach of *bonâ fide* creditors. The bill charges that this conveyance to M'Intyre was made with knowledge on his part, of the nature of the conveyance from Crombie to Welch, and with a view of aiding Welch to perfect his title as against the creditors of Crombie. These charges are denied by M'Intyre n his answer, and the

plaintiff is bound to establish his allegations by proof. This he does, in our opinion, by the evidence in the case. The agreement of February 3d, 1834, executed by both Welch and M'Intyre, in a previous negotiation for the transfer of the same interest, furnishes the proof of sufficient knowledge on the part of M'Intyre, to subject the conveyance of Crombie to Welch to be impeached by creditors of Crombie, notwithstanding the deed from Welch to M'Intyre.

3. But it was further objected, that the deed from Crombie to Welch cannot be impeached by the plaintiff, because he was not a creditor of Crombie at the time that conveyance was made ; and this raises the question, whether the effect of the statute of 13 *Eliz. c.* 5, is to avoid conveyances made upon secret trust and with fraudulent intent, as well in favor of subsequent as previous creditors. On this subject we apprehend the law is well settled. In England, and in several of the States of the Union, the question has been litigated, whether a voluntary conveyance untainted with fraud might be avoided by subsequent creditors of the grantor. In the decisions of these cases, while the court have held that such voluntary conveyances would be good as against subsequent creditors, they have uniformly maintained the opinion, that a conveyance fraudulent at the time of making it, might be avoided in favor of subsequent creditors. On this point we refer to *Sexton* v. *Wheaton*, 8 Wheat. 229 ; *Benton* v. *Jones*, 8 Connect. R. 190 ; *Howe* v. *Ward*, 4 Greenleaf, 195 ; *Wadsworth* v. *Havens*, 3 Wendell, 411 ; 1 Story's Comm. on Equity, 352. The same doctrine seems to be fully recognized by our Court in the cases of *Damon* v. *Bryant*, 2 Pick. 411 ; *Bennett* v *Bedford Bank*, 11 Mass. R. 422.

In this bill the plaintiff also prays that the defendant Welch may be ordered to contribute towards discharging the mortgage of lots No. 42, 44 and 46, such proportional sum as the value of lot No. 44 bears to the value of all the lots described in the mortgage, or that a sum equivalent to such proportional share be deducted from the money to be paid in redemption of the mortgage. We do not consider this as a proper case for contribution. Such a case would arise where several mortgaged parcels had been transferred by the mortgagor to different

individuals, all the parcels continuing subject to the mortgage. As a person wishing to redeem one parcel could only redeem by paying the whole sum due on the mortgage, the party thus removing the incumbrance is entitled to remuneration ; the remedy in such a case being, according to the doctrine of *Gibson* v. *Crehore*, 5 Pick. 152, that the party thus discharging the mortgage would be considered as assignee of the mortgage and entitled to hold the whole estate mortgaged until he has been remunerated *pro ratâ.* It is obvious that the present is not a case where the plaintiff can be thus substituted as the assignee of the mortgage. The lot No. 44 has been released and discharged from the mortgage by the release of Adams of December 15th, 1834. The mortgage being thus cancelled as to lot No. 44, no recourse can be had directly to that lot for aid or contribution in the payment of the mortgage. But it is a well settled legal doctrine, that where lands are charged with a burden, that burden should be shared equally. Courts of equity will always enforce this rule, either upon the principle of contribution, or in some other mode that will do substantial justice between the parties. It is an equally well settled rule, that if one party has deprived the other of his right to enforce a contribution, or what is here deemed equivalent, the right of substitution in the place of the mortgagee, he will be excluded from so much of his demand as the party might have enforced but for the interference of him who has thus discharged a por tion of the lien. *Cheesbrough* v. *Millard*, 1 Johns. Ch. R. 409 ; *Stevens* v. *Cooper*, 1 Johns. Ch. R. 430, and cases there cited.

A recurrence to the facts in the present case will readily show the propriety of the application of the rule just stated, to this case. The original mortgage to Brooks embraced the three lots No. 42, 44 and 46, each bound to contribute its proportionate share to redeem the mortgage. The interest of Crombie in lot No. 44 was in 1827 conveyed to Welch, and in 1833 by him conveyed to C. D. Coolidge. On the 8th of August, 1834, Welch became the assignee of the mortgage from Brooks. This was the situation of the parties when the plaintiff became the owner of the rights in equity of redeeming lots No. 42 and 46. It will be perceived that the right of

redeeming the several parcels of land included in the mortgage, had now vested in different persons, and the principle of contribution to discharge the common burden resting on them all, would properly apply to them ; but the interference of Welch and Adams has deprived the plaintiff of all means of enforcing a contribution directly as against lot No. 44, inasmuch as Adams, who holds this mortgage under an assignment from Welch of December 10th, 1834, did on that day release and discharge lot No. 44 from the mortgage. The application of the legal principle before stated will require us to rule, that the operation of the release of lot No. 44 be, to abate so much from the sum that would otherwise be due on this mortgage, as the proportional value of lot No. 44 at the time of the execution of the mortgage, was to the value of all the lands included in the mortgage.

We shall direct a reference to a master to ascertain the value of the several lots 42, 44 and 46, at the date of the mortgage, that there may be abated from the amount due on the mortgage the sum that would have been ratably chargeable on lot No. 44. Also, that he state an account of moneys due on the mortgage, preparatory to a final decree.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiff.

*S. D. Parker*, for the defendants.