## MILLS v. MORRIS.

A DEBT was contracted in November, 1837. In March of that year, directions were left with an attorney to prepare a voluntary settlement upon a wife. It was then prepared, but not executed until September, 1837. At that time the settler owed about $40,000, and was largely indebted, when he contracted the debt to the complainant. All the debts owing by him when he made the settlement were paid off, but it did not appear that they were paid in the period between making the settlement, and contracting the debt in question. They were paid chiefly by incurring other debts. And though the creditors changed, little variation as to the amount of debts took place. The complainant obtained judgment in February, 1838.

Held, that the settlement was fraudulent and void.

Held also, that although the interest in the property was contingent under a devise, it might be sold, all proper parties to join in the conveyance.

*Mr. Field*, for the complainant.

*Mr. D. Hall*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR:—The decision of this cause involves the vexed question of the right of a subsequent creditor to set aside a voluntary settlement.

The debt of the complainant was contracted on the 1st of November, 1837, when a note was given upon a purchase of wine made by the defendant, John B. C. Morris. In March, 1837, directions were left with counsel for the preparation of a settlement of the property in question, in favor of the wife of Morris, and a deed was then prepared

accordingly.  It remained unexecuted until September, 1837, when it was consummated and delivered.  A judgment was recovered by the complainant in February, 1838. It is said that he failed in June, 1838, but as a judgment for a certain uncontested debt was recovered in February preceding, I should suppose the failure took place then. The defendant, when he made the settlement in question, owed forty or fifty thousand dollars.  When he failed he owed about as much.  When he contracted the debt to the complainant, he was largely indebted.  I do not find the amount clearly ascertained.  All the debts however, (the exception is trifling, if proven, and it is not clearly proven there was any exception,) owing by him when he made the settlement, have been paid off.  They were paid prior to the filing of the bill, but it does not appear that they were paid in the interim between the delivery of the settlement, and the contracting of the debt of the complainant.  As that was a period short of two months, it is improbable that they were then all discharged.  At any rate it seems certain, that whatever may have been the mutations as to the creditors of the defendant, there was little or no change as to the actual amount of debt, during the whole period from the spring of 1837, to February, 1838, when the judgment was recovered.

I never met with a case to which the powerful argument of the Master of the Rolls, in *Richards* v. *Smallwood*, (*Jacobs*, 556,) was so closely applicable.  In my opinion, that argument, with the decisions in *Ridgeway* v. *Underwood*, (4 *Wash. C. C. Rep.* 137,) and *Sexton* v. *Wheaton*, (8 *Wheaton*, 229,) supply the whole law upon the subject. They effectually determine the invalidity of the settlement in question.

The next question is as to the remedy.  Even supposing the estate is wholly contingent, yet under the decisions in *Edmeston* v. *Lyde*, (1 *Paige*, 637,) and *Knight* v. *Weathercox*, (7 *Paige*, 185,) I think that there may be a decree for a sale of the interest of the defendant in the property settled, all proper parties to join in the conveyance, to be approved of by a master, if the parties differ.