Baldwin, J.
The principles of the common law denounced all frauds perpetrated .against the subsisting rights of others, and gave relief to the party injured. In regard to frauds upon creditors, the mode of redress was to tre,at the fraudulent act as a nullity, and permit the creditor to prosecute his legal remedies for the recovery of his demand, in like manner as if the fraudulent act had never been done. The statute of 13 Eliz. ch. 5. (substantially adopted into our code) was passed in aid of the common law, and sprang from the great and growing mischiefs occasioned by the covin and ingenious devices of fraudulent debtors. It is highly remedial and beneficial in its nature, and is entitled to a free and liberal interpretation. It has often been said to be declaratory of the principles of the common law ; and this is certainly true ; but it is moreover true that its operation is more extensive and salutary than the rules of the common law, at least as they were understood at the time of the enactment of the statute. In fact it introduced a principle which had not theretofore been recognized by the courts, that of extending relief to rights not in existence at the time of the fraudulent transaction ; for it was agreed in Twyne's case, 3 Rep. 83. that by common law, an estate made by fraud shall be avoided only by him who had a former right, title, interest, debt or demand, and not by one more puisne. But the statute embraces all creditors, whether existing at the date of the fraudulent conveyance &c. or thereafter arising ; for it will be seen on examination, that it *129 looks more to the fraudulent intent with which the act is done than to the immediate consequences; regarding creditors as a class of persons entitled to the protection of the law, and contemplating not merely actions, suits, debts, damages &c. which should actually be, but those also which might be, in any wise disturbed, hindered, delayed or defrauded; and declaring all gifts, grants, conveyances &c. made with the proscribed purpose or intent, to be clearly and utterly void, frustrate and of none effect, as against all such persons. The result has been to admit subsequent creditors to relief against a fund fraudulently alienated, where the conveyance has been or might be successfully impeached by prior creditors. This is the fair conclusion from the current of decisions, (see Walker v. Burroughs, 1 Atk. 93. Taylor v. Jones, 2 Atk. 600. Russell v. Hammond, 1 Atk. 15. St. Amand v. Countess of Jersey, 1 Com. Rep. 255. Lord Townshend v. Windham, 2 Ves. sen. 1. Montague v. Lord Sandwich, cited in 12 Ves. 136. n. Beaumont v. Thorpe, 1 Ves. sen. 27. Reade v. Livingston, 3 John. Ch. R. 497.) and must be regarded as the established doctrine, though contrary to the opinion of sir William Grant in Kidney v. Coussmaker, 12 Ves. 136. in which he professed to follow an opinion of lord Rosslyn in Montague v. Lord Sandwich, not reported, but which opinion, it would seem from a note to the same page, he had misunderstood.
The principle, it is true, upon which the subsequent creditor has been admitted to such relief, has not always been distinctly or correctly stated. Lord Rosslyn in particular, in the case of Montague v. Lord Sandwich, fell into the error of supposing the ground to be, that the subject was thrown into assets, and the subsequent creditors so let in. But how can the subsequent creditors be let in, unless the conveyance be fraudulent as to them ? and what propriety can there be in placing the right of the subsequent creditor to relief, upon the will and pleasure of the prior creditors in re *130 gard to impeaching the fraudulent alienation ? The true principle I conceive to be, that a fraudulent intent of the grantor against one or more creditors is fraudulent against all, and the statute justifies no other distinction between prior and subsequent creditors, than that which arises from the necessity of shewing a fraudulent intent against some creditor; which cannot be done in behalf of creditors not in existence at the time of the conveyance, but by proving either a prior indebtedness, or a prospective fraud against them only. I would moreover, on this part of the subject, refer to the conclusive reasoning of mr. Atherley in his able treatise on Marriage Settlements, p. 213. and of sir Thomas Plumer, master of the rolls, in Richardson v. Smallwood, 1 Jacob’s Rep. 556.
It is the fraudulent intent, therefore, in relation to creditors generally, which forms the substance of enquiry in all questions of fraudulent alienation ; and the courts have, of necessity, resorted to a legal presumption arising out of the general nature of the case, and to marks or badges of fraud furnished by the particular circumstances. The legal presumption is founded upon a comparison of the consideration for the conveyance &c. with thht which constitutes the just claims of creditors ; and though voluntary conveyances are not mentioned in the statute, their true character and effect are necessarily involved in its application. This leads to a construction natural and wholesome, and not justly liable, it seems to me, to the imputation of Eyre, B. in Jones v. Boulter, 1 Cox’s Ch. R. 288. of being artificial and puzzling. Upon the question of fraudulent intent where the conveyance is voluntary, the law, following the dictates of common sense, gives, on the one hand, due weight to the meritorious considerations arising out of the natural duty of the grantor to make provision for his children and family ; and, on the other, to the paramount obligation of discharging the just demands of *131 creditors. Where the grantor, disregarding an obvious moral and social duly, withdraws the means necessary for the payment of his debts, for the ostensible purpose of advancing the interests of those connected with him by ties of blood or marriage, the transaction speaks for itself; it is properly regarded by the law as fraudulent, and requires no special marks or badges of a fraudulent purpose. But where there are no interfering claims of creditors, there can be no propriety in restraining the grantor’s dominion over his own property, especially when exercised for meritorious puposes, because he may thereafter contract pecuniary engagements beyond his ability to discharge. The presumption therefore against a voluntary conveyance, though fair upon its face, derived from the grantor’s indebtedness at the time, I regard as wise and salutary, adapted to the promotion of justice, and conceived in the true spirit of the statute.
I can perceive no objection to this legal presumption in all cases of prior indebtedness ; but the weight of it is another matter, depending, it seems to me, upon the extent of that indebtedness. There is high authority for treating the presumption as conclusive in relation to all creditors existing at the time of the voluntary conveyance, without regard to the amount of their demands or the circumstances of the grantor. It was so held by chancellor Kent in the case of Reade v. Livingston, 3 Johns. Ch. R. 492. in which the authorities are elaborately reviewed, but to my apprehension, not with his usual success. His opinion is supported by that of mr. Atherley, in his work above referred to, p. 212. The rule would no doubt be a convenient one in its practical application, and cut up by the roots many perplexing controversies. But the objection to it is, that it would not unfrequently be harsh and unreasonable in its operation, converting a laudable into a fraudulent purpose, and too often involving innocent children in *132 the ruin of their parents. Where á parent is in prosperous or unembarrassed circumstances, and makes advancements to his children adapted to their wants and justified by his means, leaving ample funds for the payment of all his just debts, there can be no propriety in treating his conduct as fraudulent, in behalf of creditors who have delayed the prosecution of their demands until those means have become exhausted. The preponderating weight of authority is in favour of this view of the subject. Such is the opinion of judge Story, after a careful examination of the cases. 1 Story’s Eq. 349. &c. It was so held by the supreme court of the United States in the case of Hinde's lessee v. Longworth, 11 Wheat. 199. That decision is in conformity with the doctrine of lord Mansfield in Cadogan v. Kennett, Cowp. 432. To the same purport is the case of Salmon v. Bennett, 1 Conn. R. 525.-judge Spencer's opinion in Verplanck v. Story, 12 Johns. Rep. 557.—and the case of Jackson v. Town, 4 Cowp. N. Y. Rep. 604. cited 1 Story’s Eq. 359. And see Newl. on Contr. 385.
Thus, while I regard the indebtedness of the grantor at the time of a voluntary settlement or conveyance, as raising a legal presumption against its validity, that presumption I consider only prima facie, and not conclusive. It is liable to be repelled by the particular circumstances of the case; as where it appears that the then existing debts were secured by mortgage, Stephens v. Olive, 2 Bro. C. C. 93. or by the settlement or conveyance itself, George v. Milbanke, 9 Ves. 193. or that the grantor was in prosperous and unembarrassed circumstances, and the provision made for his children or family a reasonable one according to his state and condition in life, and leaving enough for the payment of his debts; Hinde's lessee v. Longworth, above cited. On the other hand, the legal presumption may be strengthened by particular circumstances, and rendered conclusive by a degree of indebtedness amounting or approaching to insolvency.
*133 This legal prima facie presumption depends, I think, upon the general nature of the case, as presented by a comparison of the considerations recognized by law, and not upon the particular circumstances, for example, the degree of the grantor’s indebtedness, or the extent of his resources. These and other circumstances may be resorted to for the purpose of confirming or repelling the legal presumption, the weight of which must always be left to the sound discretion of the court, and applied with a single eye to the truth and justice of the cause. I am aware that in Holloway v. Millard, 1 Madd. Ch. Rep. 413. (am. edi. p. 225.) sir Thomas Plumer, in speaking of a voluntary conveyance, says, its being voluntary is prima facie evidence, where the grantor is loaded with debt at the time, of an intent to defeat subsequent creditors. But surely, unless the debts be secured to the creditors, such a degree of indebtedness would be conclusive against the fairness of the conveyance ; for what conceivable circumstance could in such a state of things repel the presumption of a fraudulent purpose? And in George v. Milbanke, 9 Ves. 194. lord Eldon states the doctrine to be, that in general cases, prima facie, a voluntary settlement will be taken to be fraudulent; but shews that case to be an exception, because the settlement provided for the payment of the grantor’s debts, which made it good against subsequent creditors. Nor can I admit that there is any distinction in the application of the presumption to prior or subsequent creditors, as suggested in Reade v. Livingston, by chancellor Kent, who approves of it as to the former, but is disposed to reject it as to the latter; a distinction acted upon by the supreme court of Massachusetts in Bennett v. Bedford Bank, 11 Mass. R. 421. but repudiated by mr. Atherley in his work on Marriage Settlements, p. 215. 217. 218. For my part, 1 cannot conceive how, on a question turning upon the same fact, to wit, that of prior indebtedness, a distinction can be drawn between antecedent *134 and subsequent creditors, in the construction of a statute denouncing the alienation of the grantor as fraudulent against his creditors generally.
The foregoing remarks tend to shew, that though the ]egai presumption arising from prior indebtedness is highly useful in the application of the statute, yet it would not always be sufficient or safe, without resorting at the same time to the particular circumstances of the case, furnishing, on the one hand, a guide to an innocent and honest purpose on the part of the grantor, or, on the other, marks or badges of a fraudulent intent. It would of course have no application to the case of subsequent creditors, where the grantor was free from indebtedness at the time of the conveyance or settlement. And yet there can be no doubt that the alienation may still be fraudulent within the true intent and meaning of the statute, as springing from a fraudulent purpose directed exclusively against subsequent creditors. The conveyance may be made with a view to future indebtedness, and in order to shield the grantor against its consequences. Stileman v. Ashdown, 2 Atk. 481. Fitzer v. Fitzer, 2 Atk. 511. Richardson v. Smallwood, Jacob’s R. 552. Sexton v. Wheaton, 8 Wheat. 246. And where such an intent can be shewn, the conveyance will be void, whether the grantor was indebted or not. Ibid. Salmon v. Bennett, 1 Conn. R. 525. Nor is it necessary that an actual or express intent should be proved; for that would be impracticable in many instances where the conveyance ought not to be established. It may be collected from the circumstances of the case, ibid. Lord Townshend v. Windham, 2 Ves. sen. 1. and the enquiry will be aided by bearing in mind what have usually been regarded by the courts as marks or badges of fraud. Amongst these, are the unreasonableness of the gift, compared with the circumstances of the grantor; his continuing in possession of the property against the terms of the conveyance, exér *135 cising acts of ownership over it, paving the taxes, receiving the rents, or otherwise enjoying the proceeds, Twyne's case, 3 Rep. 83. Stone v. Grubbum, 2 Bulst. 225. 3 Dyer 294. Oakover v. Pettus, Cas. Temp. Finch 270. Bates v. Graves, 2 Ves. jun. 292. Perine v. Dunn, 3 Johns. Ch. R. 516. Salmon v. Bennett, 1 Conn. R. 525. And in estimating the weight of such circumstances, I cannot doubt that the proviso of the statute, in favour of conveyances or assurances upon good consideration and bona fide, ought to have an important influence; for it serves to shew (what is perfectly reasonable in itself) that the legislature intended to avoid all conveyances &c. to the prejudice of creditors, whether prior or subsequent, which were not made in good faith, and therefore all which were incompatible with the avowed or ostensible consideration. And this idea I understand to be intimated by lord Hardwicke in Taylor v. Jones, 2 Atk. 603. when he says, “But the material consideration is whether it” [the conveyance] “ be within the proviso of the statute 13 Eliz. for if it is not, the court will not require a strict proof of its being fraudulent.”
I have thus, in consequence of the conflict amongst some of the authorities, and the imperfect manner in which some of the decisions have been reported, endeavoured to ascertain the true principles belonging to the subj’ect; and if I have been successful, there will be but little difficulty in the application of them to the case before us.
If the case were free from any special marks or badges of fraud, the deed in question would still appear upon its face to have been a voluntary conveyance in consideration only of natural love and affection ; and if it be ascertained that the grantor was indebted at the time, must be liable to the prima facie legal presumption against its validity. But here it has been strongly urged by the appellants’ counsel, that the special verdict does not find any indebtedness of the grantor at *136 the time of the conveyance, but a mere possibility of collateral liability, arising out of his having been surety for a deputy sheriff. I cannot concur in this view of the matter. The finding of the special verdict is, “ that t]je ¿ee¿ under which the plaintiffs claim was executed, by Samuel Hutchison for the purpose of avoiding a liability to which he might be subjected in consequence .of being the security of Robert Hamilton, deputy sheriff.” This, according to my apprehension, ascertains a liability which he had incurred, but to which he had not yet been subjected. The jury do not find merely the fact that the grantor was surety for Hamilton, but find'substantially, as I understand them, a liability in consequence of that suretyship. This was a debt, in my opinion, if not within the words, clearly within the spirit of the statute. The language of the statute is, “ actions, suits, debts, accounts, damages, penalties, forfeitures,” &c. which “ shall or might be in any wise disturbed, hindered or defrauded.” It embraces all pecuniary damages incurred by reason of the obligation of a contract; whether of an ascertained amount or sounding only in damages; whether as principal or surety; whether actually asserted, or only demand-able. The failure of a party entitled to a debt or damages, to prosecute his demand to a recovery, could not alter or affect the intent with which the conveyance was made. A liberal construction in allowing to persons who are or might be injured by a fraudulent conveyance, the character of creditors, ought to be and has been given to the statute, which follows and goes beyond the common law in this respect. In Twyne’s case, 3 Rep. 82. it is said to have been resolved by all the barons, “ that the statute of 13 Eliz. ch. 5. extends not only to creditors, but to all others who had cause of action or suit, or any penalty or forfeiture.” In Mountford v. Ranie, or Lenthall's case, 2 Keb. 499. there was a bond or recognizance in which Lenthall was bound *137 for the imprisonment of Drake, and a judgment on a scire facias, awarding execution thereupon against the heir and tertenants, in consequence of an escape the principal. A voluntary conveyance had been made by Lenthall, fourteen years prior to the recognizance ; and Kelynge, chief justice, and Raynsford held, on the trial of an ejectment, that the conveyance was fraudulent, though the plaintiff was but a creditor by way of escape. Twysden, on the contrary, was of opinion that there could be no fraudulent intent at the time of making the conveyance, the party not being any ways indebted, and still but collaterally, which he could not divine at first. The verdict was in conformity with Twysden’s opinion : but it will be seen that that opinion was founded upon the fact that the escape was subsequent to the conveyance; for if it had been prior, he must, upon his own principles, have concurred with the other judges. The case therefore establishes, that a liability incurred upon a collateral undertaking, though not yet enforced, gives to the claimant the character of creditor. In Luckner v. Freeman, 1 Eq. Cas. Abr. 149. though the court upheld a conveyance intended to secure the payment of honest creditors, made before the trial of a cause founded in maleficio, yet the plaintiff in the suit was let in upon the surplus after the debts were paid. In Jackson ex dem. Van Buren v. Myers, 18 Johns. Rep. 425. it was held that a conveyance made to defeat the recovery, by a third person, of damages in an action then pending for a tort, and before trial and judgment, is fraudulent and void within the New York statute, which conforms to that of 13 Eliz. And in Fox v. Hills, 1 Conn. R. 295. four out of the nine judges were of opinion, that a voluntary conveyance to defeat a cause of action for a tort (though, it would seem, no action was pending) was within their statute against fraudulent alienations, though far less comprehensive than the english statute, the operative words *138 being merely “ debt or dutyand all concurred in holding it void at common law.
The counsel for the appellants has relied much upon the case of Farley v. Briant, 3 Adolph. & Ell. 839. 30 Eng. C. L. R. 239. in which it was held, upon the construction of the statute 3 & 4 Will. & Mary, against fraudulent devises, that the devisee of a surety who-had united with the principal in covenants for the payment of rents, which covenants were not broken in the lifetime of the devisor, was not liable in an action of debt for rents accruing after his death. The statute avoids devises as against bond and other specialty creditors, and gives to the creditor an action of debt upon the bond or specialty, against the heir and devisee of the obligor jointly. In the case of Wilson v. Knubley, 7 East 128. it had been previously held, that an action of covenant not having been given by the statute, such action would not lie against the devisee upon a covenant of seisin contained in a deed of conveyance from the covenantor, to recover damages for the loss of the land, and the expenses of defending an ejectment in which it was recovered. The two cases, taken together, shew that covenant would not lie though there was a breach in the lifetime of the devisor, and that debt would not lie where there v/as no breach till after his death; but not that debt cannot be maintained where the breach was in the life of the obligor. The remedy given by that statute is a personal action, of a particular form, against the devisee, who was not liable at common law, and an action upon a bond or specialty merely; whereas the statute against fraudulent alienations gives no personal remedy, but declares in the most comprehensive terms, applicable to all damages, as well as debts of whatever nature, (what had been before provided by the common law, at least to a great extent,) that all conveyances &c. made with the proscribed fraudulent intent, shall be void against all *139 such creditors. The two statutes, it seems to me, are radically different in all respects, and the decisions upon the one can throw no light whatever upon the tion of the other.
I cannot therefore but think, if I am right in my understanding of the finding in the special verdict, that the grantor had incurred a liability at the time of his voluntary conveyance, which created an indebtedness within the true spirit and meaning of the statute, and the principles of the common law : and if so, the extent of that indebtedness is wholly immaterial; for the prima facie legal presumption attaches, and is rendered conclusive by the finding of the jury that the conveyance was made for the purpose of avoiding that liability; which fraudulent intent nullifies the deed in regard to all creditors, whether prior or subsequent. It will hardly be said, that, the jury having only found the fraudulent intent in regard to that liability, the idea of its existence in relation to others is excluded : for a fraudulent intent against one creditor is, as I think I have shewn, fraudulent as to all; and it was not necessary to find that comprehensive intent, which would have rendered the verdict general, instead of special, the province of the latter being to find the material facts of the case, leaving the general conclusion of law, or more properly the general conclusion of both law and fact, to the judgment of the court. 8 Bac. Abr. London edi. of 1832, p. 101. Monkhouse v. Hay, 8 Price 256. 3 Eng. Exch. Rep. 368.
But if it were even conceded that the liability found by the jury does not shew an indebtedness of the grantor at the time of the conveyance, still it shews that the deed was made to defeat a legal and just responsibility, to wit, his suretyship for the deputy sheriff, and was not therefore made bona fide for the advancement of his children. And when we come to look at the particular marks or badges of fraud attending the trans *140 action, we find emphatically true, what was well said by the counsel for the appellee, that the conveyance could have been made for no honest purpose: and if . . , r , , so, we can conceive no other purpose than to delay, binder or defraud the grantor’s creditors; whether creditors existing at the time, or thereafter arising, I deem wholly immaterial. The facts speak for themselves a language which cannot be misunderstood. A father, in moderate circumstances, and with an increasing family, conveys at one dash to his infant children, four in number, jointly and without discrimination, and with no provision for himself, his wife, or future offspring, his whole property, real and personal, down to his unspecified and unscheduled farming utensils and household furniture, with the grain and the live stock which furnished his bread and his meat; thereby, if to be believed, “dispossessing himself of all his goods, and subjecting himself to his cradle continuing, however, in the possession and enjoyment of the whole subject, controlling and using it as his own, paying the taxes, though charged to the grantees, and discrediting the very title which he professed to confer, by offering to sell the realty, and actually selling a portion thereof. If such shallow devices be suffered to cover up a man’s property from the pursuit of his creditors, will it not be “ not only to the let or hinderance of the due course and execution of justice, but also to the overthrow of all true and plain dealing, bargaining and chevisance between man and man, without the which no commonwealth or civil society can be maintained or continued ?”
Upon the whole, I am well satisfied that the judgment of the circuit court is right, so far as relates to the tract of 500 acres: but in regard to the tract of 100 acres, I think it wrong; that portion of the land not having been sold or levied on under the commonwealth’s execution, and though conveyed by the sheriff’s deed to the purchaser, that conveyance can pre *141 sent no obstacle to a recovery by the lessors of the . J J , plaintiff claiming under their father’s deed, they having acquired a title good between the parties, and unimpeacbable by the commonwealth or any one claiming under her; she, since the sale of the 500 acres, no longer occupying the relation of creditor, her debt having been fully satisfied by the proceeds of that sale. A difficulty, however, occurs as to the mode of correcting this error. It might be thought, at first view, that the alternative general finding of the jury, for the plaintiff or the defendant as the law of the case might be, being entire, the judgment must conform to the verdict in that respect, or not at all; which would render it necessary to set aside the verdict, and award a venire facias de novo. Such a result is to be deprecated, inasmuch as it would put the parties at sea again before a jury: and some reflection will serve to shew that it would be improper. The courts have always disregarded mere informalities in verdicts, of which numerous examples may be found in 3 Bac. Abr. London edi. of 1832, title Ejectment. F. p. 29. In this case, there can be no doubt that it was the intent of the jury to submit to the court the law of the whole case upon the facts specially found. If the alternative finding of the jury in behalf of the plaintiff had been for the lands in the declaration mentioned, or so much thereof as he is entitled to recover, it is clear there could be no objection to rendering judgment for part only. The omission of such terms I regard as a mere informality, as the jury cannot be supposed to have intended, what would have been obviously improper, to fetter the power of the court in rendering judgment according to the law of the case. The verdict ought therefore to be considered as a finding for the plaintiff of so much of the lands demanded, as in the opinion of the court he was entitled to recover. And my opinion is, that the judgment ought to be reversed with costs, and judg *142 ment rendered in favour of the plaintiff for the tract of 100 acres, one of the messuages demanded, and for the defendant as to the residue.
Stanard, J.
The finding of the jury ascertains that the deed from Hutchison to his children was not only voluntary and without valuable consideration, but was made mala fide and covinously. It is not merely constructively fraudulent as being voluntary : it is tainted with actual covin, and according to the letter and spirit of the statute, void as to all creditors. The property conveyed by it was therefore liable to the execution of the commonwealth ; and the purchaser under that execution, to the extent of the levy thereof and sale under it, has title paramount to that derived under the fraudulent deed. I think it unnecessary, in this case, to enter at large into the review of the numerous cases which have been so elaborately collected and examined by my brother Baldivin. I content myself with saying, that on other occasions I have examined them with care, and my impression was and still is, that the principle extracted by chancellor Kent, in his elaborate judgment in the case of Reade v. Livingston, 3 Johns. Ch. R. 481.—to wit, that a voluntary conveyance without valuable consideration, though free from actual covin, cannot prevail against the claims for debts existing at the time of such conveyance,—is a sound one.
The claim of the purchaser under the execution is only commensurate with the levy and sale under it. As that levy was on one tract of 500 acres, the sheriff had no authority to sell and convey more, and his deed to the purchaser for the other tract of 100 acres conveyed no title, and the judgment in respect to the tract of 100 acres was erroneous.
The judges unanimously concurred in reversing the judgment of the circuit court, with costs, and entering *143 judgment, as to the tract of 100 acres of land, that the plaintiff recover his term yet to come in the same, and his costs of suit; and as to the tract of 500 acres, that the defendant go thereof without day.