Pawley et al. v. Vogel.

———————•———————

MORRIS PAWLEY AND HETTY L. PAWLEY, Respondents, *v.* JOHN C. VOGEL, Appellant.

1. *Executions — Property exempt from — Marriage Settlements — Construction of Statute.*— The provisions of the act exempting additional property from execution (R. C. 1855, p. 754, § 1) do not affect the right of the husband to receive and dispose of his wife's property; nor do they exempt her property from the indebtedness of the husband created after the reception of such property by the wife.
2. *Husband and Wife — Marriage Settlements — How affected by debts of Husband, at law and in equity.*— The doctrines of equity touching settlements of money or property in trust for the sole and separate use of the wife relate purely to property that belongs to the wife before marriage, or which may have been given or bequeathed to her after marriage, and expressly settled to her sole and separate use by the creation of a trust for that purpose. In such case a proper instrument, based upon a valuable consideration, to the effect that she may carry on a separate trade on her sole account in the name of her trustees, may be protected at law and may be enforced in equity, for the benefit of her husband, against him and his creditors; but a voluntary agreement of this kind will not be good against his creditors. And neither law nor equity will permit an insolvent person, in the absence of any instrument like that mentioned, to carry on his own trade, with his own money, or with moneys that were donated by himself, in the name and under the cover of being his wife's trustee, for their common advantage.

3. *Husband and Wife — Voluntary Settlements — Creditors.*— As between the parties themselves, a voluntary settlement upon the wife may be upheld in equity. And where the husband is not indebted at the time of making it, such settlement cannot be impeached by subsequent creditors merely on the ground of its being voluntary. But if he were indebted at the time, or if it were made with a view of being indebted at a future time, it will be void as against creditors prior and subsequent.

4. *Practice — Replevin — Trusts not recognized by action of.*— In a joint action of husband and wife upon claim for delivery of personal property, the court can take no cognizance of trusts or of the equities of the wife.

5. *Husband and Wife — Wife's Trust Estate — What Proceedings to protect against Husband's Creditors.*— If a trust can be maintained in equity in favor of the wife against her husband's creditors, the proper remedy would be a proceeding in equity on her behalf to establish the settlement and to obtain a perpetual injunction restraining a sale of the property under a judgment at law against him.

### *Appeal from St. Louis Circuit Court.*

On the 10th day of January, 1862, Joshua Owens obtained a judgment against Morris Pawley, one of the plaintiffs in this suit, upon a note for $360.53, and on the 10th day of November, 1865, levied an execution upon certain household furniture, as belonging to said Pawley, to satisfy the judgment. This action was brought by plaintiffs to recover the furniture, as being the separate property of Hetty L. Pawley. The evidence in the case, among other things, showed a lease made on the first day of February, 1859, by Henry Shaw to Morris Pawley, of a certain lot on Grand avenue, for thirty-three years, with the privilege of renewal thereafter for ten years. This lease contained a clause that said leasehold premises should be held "for the sole and separate use of Hetty L. Pawley, wife of Morris Pawley, separate and apart from her said husband, and not subject to any debts or liabilities of her said husband." On the 2d day of January, 1860, Shaw loaned Pawley $3,500, for which he took the joint notes of Pawley and his wife, payable at ten years from date, and secured by deed of trust on the leased premises, executed by them jointly. On the 20th day of August, 1864, Pawley effected another loan of $3,000 from Shaw, secured in like manner. From the money last borrowed he purchased the above-mentioned furniture, as trustee of his wife. The remaining facts necessary

to an understanding of this case will be found in the opinion of the court.

Defendant, on the trial, asked the following, among other instructions, which were refused:

1. If the jury believe from the evidence that Hetty L. Pawley and her husband, Morris Pawley, fraudulently claim and pretend the property in question to be the separate property of Hetty L. Pawley, for the purpose and intent of cheating, hindering, and delaying the creditors of Morris Pawley; or that said property was acquired with money borrowed by them, or either of them, at any time during their marriage, or with money made by their joint labor, speculation, or enterprise, or the labor, speculation, or enterprise of either of them, or out of money received by said Hetty L. Pawley through inheritance from her parents or otherwise, at any time prior to the date of the note given in evidence by defendant for which the judgment was rendered on which the execution was issued — then, in either of the cases above mentioned, said property could be lawfully seized to satisfy said execution, and so the jury should find.

2. If the jury believe from the evidence that Hetty L. Pawley, wife of Morris Pawley, leased a lot on Grand avenue, from Henry Shaw, subsequent to her marriage with said Morris, and while said Morris was in embarrassed circumstances, and subsequently borrowed money on the same and used said money or any part thereof to purchase the personal property in question; or that said personal property was purchased by said Hetty L. with money received of said Morris Pawley at any time or from any one else prior to the date of the note given in evidence by defendant; and that said Vogel was, at the time of the seizure of said property, sheriff of St. Louis county, and that he took the same to satisfy the execution read in evidence — then they must find for the defendant, and assess the value of said property, and also the damages for its taking and detention, as directed in instruction No. 1.

3. If the jury believe that the money or any part of the money used in purchasing the property in question was borrowed of Henry Shaw, on the joint note of Pawley and wife, or that any

of it was earned by Pawley, the husband, and used in the purchase or payment of the interest on the notes thus given to Shaw for the purchase-money, and that said Morris Pawley was at the time indebted to the plaintiff in the execution read in evidence for the causes of action on which they were issued, or that the notes or either of them read in evidence were executed by said Pawley, then said property was subject to be taken to satisfy the same; and in that case it makes no difference whether said Pawley was an accommodation maker or not.

4. If the jury find that the property in question was purchased with money borrowed on the joint note of Pawley and wife, given to Henry Shaw, and that the same was seized by Vogel, while sheriff, to satisfy the execution read in evidence, then they must find for the defendant.

*Cline, Jamison & Day*, for appellant.

This case involves a construction of the first section of the statute of 1855, usually known as "the married women's act." (R. C. 1855, p. 754.)

I. As this statute is in derogation of the common law, it should receive a strict construction at the hands of courts. It clearly was intended to protect only such property of the wife as she might own at the time of her marriage, and such property as she might acquire after her marriage and subsequent to the date when her husband contracted the debt, and by a mere lucrative title, and not such as might come to her during coverture from her husband, or by the onerous title of purchase. The fruits of her labor, skill, and speculations, by virtue of the marriage contract, and all acquisitions made by the husband and wife during coverture, belong to the husband, and are liable to be sold to pay his debts. (Phelps v. Tappan, 18 Mo. 394; Walker v. Walker, 25 Mo. 375; Hockaday v. Sallee, 26 Mo. 219; Bernayer v. Slevin, 4 Am. L. R. 559; Hollowel *et al.* v. Horter, 35 Penn. St. 378; Robinson & Co. v. Wallace, 39 Penn. St. 132; Hoffman v. Town, 49 Penn. St. 231.) There was no evidence even tending to show that either the lease, the money borrowed, or the furniture in controversy, was the separate estate of Hetty L. Pawley, the wife

of her insolvent co-plaintiff, or that she had ever acquired any or either of them in any way recognized by law wherein a married woman could acquire property as against her husband's creditors. (Morell v. Smith, 37 Me. 394; Woodson v. Pool, 19 Mo. 340; Frissell v. Rosier, 19 Mo. 448.)

The consideration for the lease taken from Shaw was the covenants of Morris Pawley. His wife was not bound, nor could she bind herself. There is no covenant in the indenture that purports to be the covenant of the wife. The entire consideration springs from the husband; and the statute of fraudulent conveyances, as a matter of law, executes the use with the legal title in the husband, in favor of his creditors both prior and subsequent. The lease was, on the day of this levy, liable to be sold under execution, and the purchaser would have taken an absolute title against both husband and wife, as a matter of law, arising on the face of the deed, irrespective of the intention of Pawley to defraud. The most favorable view which it is possible to take of this case is to regard these transactions as a post-nuptial settlement by an insolvent debtor upon his volunteer wife. This, it seems, the court below supposed could be done; but upon what principle of law, they seem to have been unable to explain. In this view of the case, the only pretense by which the claim of Mrs. Pawley can be upheld is, that the settlement was for a valuable consideration; and, as none is pretended, her claim as against the defendant is void, as a sheer matter of law, and so the court should have instructed the jury. The law imputes bad faith when the direct effect of the transaction is to defraud. And such being the effect in this case, the second section of our statute of fraudulent conveyances defeats the claim of plaintiffs to the property in question. (Woodson v. Pool et al., 19 Mo. 340; Read v. Livingston, 3 Johns. Ch. R. 491; Miller v. Thompson, 3 Port. 196; O'Donnell v. Crawford, 4 Dev. 197; Bogard v. Gardley, 4 Sm. & M. 302; Barbee v. Wimer, 27 Mo. 140.)

The personal property in controversy is claimed to have been purchased by money borrowed on the joint note of husband and wife, and was in possession of the husband at the time of levy. In what light can it be claimed to be the separate property of the

wife, or to be held by the husband as trustee of the wife? No such use is dedicated by deed duly recorded, as required by law. The wife neither purchased nor paid for it, nor is she liable to an action on the notes which they claim to have been given for the money out of which it was paid for. The husband alone is liable upon them; and in law both the title and the possession were in the husband at the time of the levy. Now, after the levy is made, he comes forward and claims to hold the personal property as trustee of his wife on a verbal dedication of use in her favor. Independent of all considerations we have urged against the claim of the wife to this property, this would be void under the fourth and fifth sections of our act concerning fraudulent conveyances. (Layson v. Rogers, 24 Mo. 192; Barbee v. Wimer, 27 Mo. 140.) A gift of a chattel by the husband to the wife, without consideration, is void. (Woodson v. Pool, 19 Mo. 340.) It has been contended by the counsel for Pawley and wife that the words in the statute under consideration embrace property situated as is the property in controversy, and that the word "otherwise" should be construed to mean every species of conveyance that can be made of personal or real property. The true rule of construction, when applied to this statute, cannot enlarge its meaning to embrace any conveyances of property except those which could be lawfully made to a married woman. And in the State of Maine, where the statute permitted the wife to become the owner of property "purchased," etc., by her, its intent was held not to include property purchased by her earnings, as they belonged to her husband. (Morell v. Smith, 37 Me. 394.)

One of the first canons of construction is, that when general terms are added to words of particular description they do not enlarge the modes or subjects embraced in the particular words. (United States v. Wise, 2 Wallace, Jr. 72.) How can any one contend that the words of this statute embraced modes of conveyance that were at that time and have always been pronounced void? The words of the act do not purport to make any act or thing done by the wife or any one else a conveyance binding in law that was not so before. It does not purport to enlarge the means whereby a married woman can acquire property, but only

attempts to exempt such property as she may lawfully acquire from levy and sale. Could Mrs. Pawley lawfully become the volunteer owner of the use of leasehold premises dedicated to her by her insolvent husband, and declared by him to be held to his wife's use as against the whole world, and especially his own creditors? This is a bold-faced fraud, and in terms shows its purposes to be prohibited by the second section of our statute of fraudulent conveyances—made and expressed to be for the purpose of placing it above the reach of his creditors prior as well as future. (Potter v. McDowell, 31 Mo. 62.) This was apparent upon the face of the lease, and the court should have so stated to the jury. (Bigelow v. Stringer, 40 Mo. 195.)

If the court regards the leasehold as a settlement by the husband upon his wife as a mere volunteer, and the husband as the legal owner and the settler of the use, then how could the wife enforce any rights under the lease, in a court of chancery, against her husband? It could not lend its aid in favor of a volunteer against a settler, where the legal title remains in him. She could not call him to account, nor divest him of legal title. (Ellison v. Ellison, 6 Vesey, 656.) If the party be not indebted at the time of a voluntary settlement, and have no fraudulent design, it would be held good as to subsequent creditors. But if the party, as in this instance, be insolvent at the time of a voluntary settlement, then such settlement is void, as a matter of law, both as to prior and subsequent creditors; and this is the universal doctrine of every enlightened court, of this country as well as that of England. (Ath. Marriage Set. pp. 149, 230, 237, 212; Read v. Livingston, 3 Johns. Ch. R. 481; Townshend v. Wendham, 2 Ves. 1; Fitzer v. Fitzer, 2 Atk. 511.)

*Strong*, for respondents.

I. The statute exempting additional property from execution (R. C. 1855, p. 754, § 1) not only exempts the property acquired by the wife, but also the uses and profits thereof. It was clearly the intention of the Legislature to protect all her property, and all the fruits and increase of it. Of what use would the largest landed estate be to a married woman, if, the moment it became

productive and yielded a money income, that money or anything purchased with it was to be subject to the payment of her husband's debts? With a property worth a million, she might suffer for the necessaries of life through the folly or imprudence of a reckless or unfortunate husband. If money or personal property cannot be secured to a married woman under the provisions of this act, its benefits are imaginary rather than real.

The attempt is made by defendant to liken this to a case of post-nuptial settlement. The only pretense for holding that it is property settled on his wife by Pawley is, that as her trustee he signed the lease which contained covenants for the payment of rent. It is a well-settled principle that a husband not only may be the trustee of his wife, to hold property for her separate use, but that the law will, in the absence of a regular trustee, make him her trustee, or charge him as a trustee, and compel him to execute the trust in certain cases. (2 Story on Eq. Jur. § 1380.) In the management of a trust estate it often becomes necessary for a trustee to enter into contracts for the benefit of the estate which would create a personal liability on his part. But he has the trust property for his protection, and cannot be compelled to incur liability beyond the indemnity secured by that property. He may be considered a security on the contract for the benefit of the trust property; and that property will be subjected to the burden of discharging the contract or reimbursing the trustee. If this were not so, a married woman having a separate estate in the hands of a trustee could never enjoy the benefit of any contract respecting it. She could make no contract touching it (except, perhaps, to charge it with the payment of her debts), because of her coverture, and because the legal title is in her husband; and if he cannot contract respecting it, without having the property treated and become liable as his own, she loses some of the principal advantages of having a trustee.

While it is true that Pawley signed this lease containing these covenants, and also the notes and deeds of trust, this was required out of abundant caution to avoid any trouble or questions in case of foreclosing the deeds of trust, and not because Mr. Pawley's credit or his personal responsibility formed in fact any

Pawley et al. v. Vogel.

part of the consideration of the lease or of the loans. Any presumption of such facts, arising upon the face of the papers, is abundantly rebutted by the proof that he had no credit or pecuniary responsibility whatever. Mr. Shaw states explicitly that he made these loans to Mrs. Pawley on the faith of the security of the leased premises and the improvements thereon. It was a proper subject of inquiry whether Pawley had in fact discharged these covenants entered into in the lease with his own means; and if he had, it would have furnished matter for the jury to consider whether this was a *bona fide* transaction or a fraudulent device. This they were directed to consider in the instruction given by the court. This is not a voluntary settlement by Pawley. He had no interest in the lease, by its terms, because it was made to the sole use of the wife. He had no interest in it by putting his money into it, for he had none to put in, and the proof clearly shows he put none in. The verdict of the jury, on the question of fraud, settles this point. The case of White v. Dorris and Wife, 35 Mo. 181, settles nearly every point in this case.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff and his wife bring this suit upon a claim for the delivery of personal property, of which it was alleged that the wife was entitled to the possession against the sheriff, who had levied upon and seized the property under execution upon a judgment against the husband. The answer denied that the plaintiffs were entitled to the possession, and set up the further defense that the claim of the wife was fraudulent and void as against her husband's creditors. This matter was involved in the issues already made under the denial of the allegations of the petition.

It appeared in evidence on the trial that the plaintiff, Morris Pawley, in 1859, being largely indebted and insolvent, took a lease from Henry Shaw of a lot of ground on Grand avenue, for a long term of years, upon rents reserved, which was expressed to be made to him as trustee to the sole and separate use of his wife; that the wife, and himself as trustee, in 1860, borrowed money of the lessor, and gave their notes and a deed of trust on the leasehold property to secure the payment thereof; and afterward, in

1864, made another loan from the lessor, in the same way; and, with the moneys so obtained, together with a small sum which she had earned, and another sum which she had received as a gift from her father, erected and furnished a house on the leased lot, in which they lived; that the leasehold and house were afterward sold at a large advance on the cost, and the balance, after paying the loans, rents, and interest, was invested in the Missouri Iron Works, in the husband's name as trustee for his wife, being himself the superintendent of the works, and having the management of the whole business from the beginning in his character of trustee. It would seem that the moneys loaned and the moneys which had come into the hands of the wife, and the fruits of their joint industry during the whole period of these transactions, went into the funds of the trust so created. It appeared that the furniture in question in this suit was purchased out of the moneys borrowed, and not out of the money which the wife had received from her own earnings, or from her father, and the property was found by the sheriff in their residence.

Without going more minutely into the details of the transaction, we are constrained to say that the whole evidence showed a state of case which could scarcely be considered otherwise than as a plain scheme of fraud upon the rights of creditors prior and subsequent. The court below (as well as the parties) appears to have proceeded upon a strange misconception of the principles of law which ought to govern such a case. It is, perhaps, not surprising that an insolvent man, laboring under the burden of debt, should be induced to resort to ingenious contrivances, in contravention of law, in his efforts, laudable when fair and honest, to raise himself above the condition of a proletary and to provide suitably for his family. But the laws cannot be perverted to the purpose of defrauding creditors of their just rights. Nor is it credible that, in any country, laws could ever be made with the express design of giving a legal sanction to positive fraud.

No authorities are produced in support of the plaintiffs' case. Reference is made to the act of March 5, 1849, which is continued in the revision of 1855, exempting additional property from execution, as having some bearing upon the matter. (R. C.

1855, p. 754, § 1.) This statute has been the subject of comment in this court in several cases. In Phelps v. Tappan, 18 Mo. 393, it received a construction as to its general object and intention, and it was said that the act seems to have been suggested by some provisions of the Spanish law which once prevailed here, and that the Legislature could have contemplated only property acquired by a lucrative title—that is, by the gratuitous gift of another; and not property acquired by an onerous title—that is, by purchase for a consideration paid, or by the fruits of the joint industry of the husband and wife. In White v. Dorris, 35 Mo. 187, it was held that the statute merely made additions to the kinds of property which were previously exempted from levy and sale under executions, and, as it was admitted that there was no fraud and no resulting trust, the property in question was held to be exempt from sale under execution against the husband. It does not affect the right of the husband to receive and dispose of such property of the wife. (Boyce v. Cayce, 17 Mo. 47.) It does not exempt the property from the indebtedness of the husband created after the reception of such property by the wife. (Cunningham v. Gray, 20 Mo. 170.) It does not certainly appear whether the money received by the wife from her father was put into the general fund before or after the creation of the debt in question; but this was immaterial. It was distinctly proved that the property levied upon by the sheriff was purchased with the money borrowed in 1864. In the view we must take of the matter, this statute had no application to the case made.

This lease was not properly to be considered as a settlement of money or property in trust for the sole and separate use of the wife at all, within the doctrines of equity on this subject. Such was not the real nature of the transaction. These doctrines relate to property that belongs to the wife before marriage, or which may have been given or bequeathed to her after marriage and expressly settled to her sole and separate use by the creation of a trust for that purpose. This lessor did not propose to make a gift of anything. A voluntary gift or settlement by the husband on his wife, while indebtedness exists, or in contemplation of future indebtedness, will be fraudulent and void as against his

creditors. In the view of a court of equity, the wife may contract and incur liabilities in reference to such separate property when once settled upon her, and may dispose of it as a *femme sole;* but such separate estate is unknown to a court of law. She may pledge and bind that property, but none other; her general disability at law continues as before; but a court of equity may proceed *in rem.* against that property, though not *in personam* against herself, and subject it to the payment of her separate debts. (Adams' Eq. 43–45; 2 Story Eq. Jur. § 1397.)

It is plain that the wife had no money settled to her separate use, and with which she could deal in this manner, before this lease was taken. The leasehold was the equivalent of the rent. The rents must have been paid by the husband, or with the fruits of their joint industry. The rents were really to be paid by the husband, and he only was bound by the covenants of the lease. The wife's money in his hands was his own money. In law, husband and wife are one person. Where a wife has money settled to her separate use, or has property of her own under an agreement with her husband upon a valuable consideration made before or after marriage, with trustees, in a proper instrument executed for her benefit and to the effect that she may carry on a separate trade on her sole account, in the name of her trustees, such an agreement may be protected at law and may be enforced in equity for his benefit against him and his creditors; but a voluntary agreement of this kind will not be good against his creditors. (2 Story Eq. Jur. §§ 1385–6.)

But that these familiar and well-settled principles appear to have been overlooked, or wholly disregarded, it would seem that it should be unnecessary to repeat them. Here was really no such case of a separate trade being carried on by the wife with her separate estate in this manner; there was no agreement between them of that nature; but, in truth, the husband was carrying on his own trade with his own money, or with moneys that were donated by himself in the name and under the cover of being his wife's trustee, for their common advantage, and in direct and plain fraud of the rights of creditors. This is a thing which neither law nor equity can allow to be done.

From the evidence it clearly appears that all the moneys that went into this leasehold estate, or into the iron business, or into the property levied on, were funds belonging in law to the husband, or placed at his disposal, or were the fruit of the joint industry of the husband and wife under the arrangement, which was voluntary merely. It may be conceded that as fast as money was acquired or value was created, after the lease was taken, it was allowed by the husband to go into this trust for the benefit of the wife. As between the parties themselves, such a voluntary settlement may be good. We do not say that a court of equity would not uphold such a trust and settlement for her benefit against him; but as between him and his creditors prior and subsequent, being attended with badges of fraud, it can be regarded in no other light than as a continuous scheme of fraud upon them. A voluntary settlement in favor of the wife by a husband who is not indebted at the time, cannot be impeached by subsequent creditors merely on the ground of its being voluntary. But if he were indebted at the time, or if it were made with a view to being indebted at a future time, it will be void as against creditors prior and subsequent. (Sexton v. Wheaton, 8 Wheat. 229.) And if it be a grant by the husband of his whole estate to the wife, it will be inoperative both at law and equity. (2 Story Eq. Jur. §§ 1374–5.)

The husband and wife are joined as plaintiffs. The suit is an action at law, and not a proceeding in equity. The petition alleges that the wife is entitled to the possession of the property. If that were true, her possession was his possession at law, and there was no reason for joining her. He was himself the owner of the legal title and had possession. A court of law could take no cognizance of the trust or of the equity of the wife in such an action. The defense of the sheriff on the evidence was completely made out; and the claim of the plaintiff, to recover this property from him in this suit, was a solecism in law. If the trust could be maintained in equity in favor of the wife against her husband's creditors, the proper remedy would have been a proceeding in equity on her behalf to establish the settlement and to obtain a perpetual injunction to restrain a sale of the property

under a judgment at law against him. We are of the opinion, therefore, that the defendant's instruction, to the effect that on the evidence the plaintiff was not entitled to recover, should have been given.

It will be sufficiently apparent from the principles enunciated herein that the court below erred both in giving and refusing instructions, and it is not deemed necessary to discuss them more in detail.

The judgment will be reversed and the cause remanded. The other judges concur.