*Harry Emmons*, for plaintiff.

*Charles B. Evans*, for defendant.

———•———

SAMUEL SLESSINGER *vs.* JACOB TOPKIS.

New Castle County, May Term, 1893.

**Judgment. Fraud.**—An insolvent or failing debtor may give a bond and warrant, confess judgment, and prefer one or more creditors to others, if done in good faith to secure *bona fide* debts, even though such secured creditors receive thereunder a greater proportion of their respective debts than could be secured to all his creditors.

**Same. Insolvency.**—A debtor may prefer one creditor to another with the direct intention of defrauding other creditors, and, unless the preferred creditor received the property with the same fraudulent design, the contract is valid against other creditors, who may be injured by the transaction.

**Same.**—To avoid a preference given to a *bona fide* creditor, it must be shown that it was given by an assignment "*eo nomine*" or by an instrument, which is in fact an assignment under cover of another form.

ISSUES FRAMED FOR TRIAL BY JURY.—This was an application to take money out of the Court, the money being the proceeds of property which had been sold under executions issued against the defendant, which money was paid into court by the Sheriff, it being claimed by junior execution creditors that the money was applicable to their judgments and not to those under which the sale was made which were alleged to be without consideration and. fraudulent.

It appeared that on December 8, 1891, Jacob H. Topkis gave bond and warrant of attorney to Samuel Slessinger for nineteen hundred and fifty dollars, and to David Abramson for fifteen hundred dollars, upon each of which judgment was entered in the Superior Court of this county and executions issued thereon. The goods and chattels of Topkis were levied upon under executions and sold by the Sheriff for the sum of twenty-two hundred and eighty-nine dollars and fifty cents, and after deducting eighty dollars for costs, the balance of twenty-two hundred and nine dollars and fifty cents was paid into court by the Sheriff, for the reason that the last named sum was claimed by Slessinger and Abramson as applicable to their executions on the one hand and by Herman Krauss and other judgment and execution creditors of Topkis on the other hand, the latter claiming that both the Slessinger and Abramson judgments and executions were irregular and fraudulent and given and entered with intent to hinder, delay, cheat, and defraud other creditors of Topkis. In order to aid the Court in determining to which of these two classes of creditors the money so paid into court rightly belonged, three issues were framed. and submitted to the jury, viz.:

1. Did Jacob H. Topkis contemplate insolvency at the time he voluntarily confessed said judgments to Samuel Slessinger and David Abramson?

2. Did Jacob H. Topkis by voluntarily confessing judgments as aforesaid, attempt to prefer Samuel Slessinger and David Abramson, the creditors to whom said judgments were so confessed, to other of his creditors, and did Jacob H. Topkis thereby attempt to

secure or pay to Slessinger and Abramson or either of them a greater proportion of their respective debts or demands than he could secure or pay to all his creditors?

3. Did Jacob H. Topkis confess judgments for the purpose of hindering, delaying, or defrauding the creditors of him the said Topkis, or any of them?

*Elliot* and *Conrad*, for plaintiff.

A confession of judgment to a creditor for a *bona fide* debt is not illegal and violates no statute of the State. Provision that a fraudulent assignment shall be a criminal offence, and the assignment itself void, clearly relates to assignments only where insolvency is in contemplation, and there is an intention to evade the insolvency act; Rev. Code, Ch. 132, §§ 3, 4. The purpose of the act was to prevent a debtor from preferring creditors, and then under the insolvency law, obtaining a full release from other creditors. It is not intended to prevent the debtor from preferring one creditor to another if he does not contemplate insolvency. In this case there was no contemplation of insolvency. The creditors thought the debtor perfectly solvent, and the debtor considered that he was able to pay all of his debts if he could realize on his stock. The creditor would not wait for him to realize, but *insisted on being secured*, or bringing suit, and in this way, by his own superior diligence, obtained a judgment for his *bona fide* debt. There is nothing in the laws of our State that makes this illegal.

On the contrary, our courts have decided that preferring a creditor in this way is legal.

1. *As to the question of creditor's knowledge.* The transfer of all the debtor's property does not warrant the inference that the grantee is aware of the debtor's insolvency; Bump, Fraud. Conv. 36.

In order to affect a vendee, he must have notice of the indebtedness. Vendors generally are indebted, and if sales by an insolvent were void, a vendee would be compelled to obtain an abstract of his vendor's circumstances as well as of his title.

A creditor who can legally obtain security for his claim is

entitled to hold it against all other creditors ; Bump, Fraud. Conv. 184 ; *King vs. Phillips,* 45 N. Y. Sup. 633 ; *Totten vs. Brady,* 54 Md. 170.

This right is not affected by the debtor's insolvency or the pre-ferred creditor's knowledge of the insolvency; 37 Ill. 341 ; 49 Mass. 411 ; 42 Barb. 98.

A payment of a debt to one creditor is not fraud upon other creditors, and is no legal injury to them ; Bump, Fraud. Conv. 186 ; *Bentz vs. Riley,* 96 Pa. 71.

Vendors and judgment debtors generally are indebted, and if sales or judgments given by an insolvent are void, it would be necessary to get an abstract of his circumstances as well as his title before accepting a judgment; 3 Barb. 634 ; 53 Md. 358 ; *Hall vs. Arnold,* 15 Barb. 599 ; *York County Bank vs. Carter,* 38 Pa. 446.

As Lord Mansfield observed in *Cadogan vs. Kennett,* Cowp. 434 : "The question in every case is whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to de-feat creditors," and to the same effect was the opinion of Mar-shall, C. J., in *United States vs. Hooe,* 3 Cra. 88 ; *Gardiner National Bank vs. Flager,* 65 Me. 359 ; *Goley vs. Goley,* 14 N. J. 350 ; 35 Ill. 223 ; 37 *id.* 332.

2. *As to irregularity of the judgment.* This was an execution issued on a judgment entered by agreement, as Tidd phrases it. The agreement was to stay execution until the day of payment, which was the ninth day of December. On the afternoon of the ninth a writ of *fi. fa.* issued, and was placed in the Sheriff's hands. This, at most, was an irregularity which no one but the defendant can complain of. The decided preponderance of the authorities is in favor of the proposition that the premature issuing is an irregu-larity merely, and it must be respected and may be enforced until vacated by law. No one but the defendant can complain of it, and he cannot do so in a collateral proceeding ; Freeman, Ex. 25 ; 48 Pa. 159 ; 7 W. & S. 257.

At common law, as soon as final judgment was signed and be-fore its entry of record execution might issue ; Freeman, Ex. 48.

In Illinois execution was issued upon a judgment by confession in advance of the actual entry of such judgment, and while the Court declared it unauthorized and void, such high authority as Freeman considers the case as very questionable. In this State it has been decided that the records and procedings of a Court of competent jurisdiction of the subject matter cannot be controverted in a collateral proceeding on the ground of irregularity ; *Pennington vs. Chandler*, 5 Harring. 395. The irregularity of judgments cannot be collaterally inquired into; *Stephenson vs. Newcomb*, 5 Harring. 150.

3. *On the question of Fraud.* The law favors the stability of judgments, and one seeking to impeach a judgment on the ground of fraud must show it by clear and satisfactory proof; 1 Black Judg. § 293. In law fraud must be proved ; 4 Cow. 207 ; 1 Wend. 424. The burden of proof rests upon the creditors who impeach the preference, and fraudulent intent must be clearly shown ; 3 Ohio 527 ; 10 N. J. Eq. 298 ; 3 Md. Ch. 29.

Fraud in the usual sense and meaning of the term is never presumed in law, but must be proved by the party who alleges it, like any other fact, to the satisfaction of the jury. *Randall vs. Sutton*, 2 Houst. 510.

As to the question of collusion which is charged in the affidavit, no proof whatever has been offered. Collusion is an agreement between two or more persons to defraud a person of his rights by the forms of law. Wherever there is a true debt and a real transfer for an adequate consideration, there is no collusion ; *Clemens vs. Davids*, 7 Pa. 263 ; *Auburn Bank vs. Fitch*, 48 Barb. 343.

If the purchaser in a Sheriff's sale leaves the goods in the hands of the execution defendant in good faith, it is not a fraud in law or in fact as against other creditors of the defendant ; *Rohland vs. Rooke*, 12 Pa. 139 ; *Gam vs. Renshaw*, 2 Barb. 36 ; 133 Pa. 71.

In the case of *Gam vs. Renshaw*, 2 Barb. 36, Chief Justice Gibson said : The sale was made when judgments were about to be obtained against him, and though an insolvent debtor may give such preferences to particular debtors as he may see proper, yet if

the motive be not payment of his debts, but in the language of the statute, " to delay, hinder, or defraud " particular creditors, the conveyance, though made on valuable consideration, is not *bona fide*, and therefore not saved by the proviso.

The payment of a just debt is what the law admits to be rightful, and is not, therefore, fraudulent, either in law or in fact. The preferred creditor cannot be affected injuriously with notice of the debtor's intent to prefer, and thereby defeat an execution, because the purpose is honest, and such as the law sanctions. This is not delaying or hindering within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority. One creditor of a failing debtor is not, under the statute, bound to take care of the others. In such case, if the assets are not sufficient to pay all, somebody must suffer. It is a race in which it is impossible for every one to be foremost. He who has the advantage, whether he gets it by the preference of the debtor, or by his own superior vigilance, or by both causes combined, is entitled, under the statute, to what he wins, provided he takes no more than his honest due. He is not obliged to look out for other creditors, or to consider whether they will or will not get their debts. He does not violate any principle of the statute when he takes payment or security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims, and though he may be aware of the intent of the debtor to defeat the collection of them.

4. *Secret motives immaterial.* Where there is merely a preference, even a jury is not at liberty to deduce fraud from that which the law pronounces honest; Bump, Fraud. Conv. 190. Involuntary conveyance is a conveyance without any valuable consideration.

There must be a fraudulent intent. In other words, it is the intent and purpose with which the grantor acts that characterizes the conveyance and renders it fraudulent under the statute; Bump, Fraud. Conv. 269.

*Hoffecker, Cooper* and *Bird* for the opposing creditors.

First. An insolvent cannot prefer a creditor, and the fact of insolvency is strong evidence of fraud in such cases; 1 Am. L. Cas. 43. Any transaction by an insolvent debtor which prefers or has the effect of preferring certain of his creditors is fraudulent and void under the statute; Rev. Code 785, § 4; *Helmrath vs. Mullin Company*, Del. Superior Court; *Waters vs. Comly*, 3 Harring. 117 ; *Groff vs. Cooper*, 6 Houst. 36, 42 ; *Sanders vs. Clark*, *id.* 471 ; *Humphreys & Tilghman vs. Smith*, 4 *id.* 1 ; *Hastings Malting Co. vs. Heller*, 47 Minn. 71 ; *Tompkins vs. Hunter*, 65 Hun 441.*

Second. The intent to defraud does not necessarily include a corrupt or dishonorable motive. It is a legal and not a moral intent,—any act done which either unlawfully prefers or hinders, delays or defrauds creditors is done in contemplation of law, with a fraudulent intent. A man is presumed to intend the natural consequences of his own acts. And this intent is to be gathered from all the facts and circumstances of the case; Bump. Fraud. Conv. 24, 25, 27, 264, 270, 271, 604, 605 ; 17 Wall. 473. In the last case slight circumstances were held to establish fraud.

Third. The intent to defraud only a few of the creditors, or indeed only one, makes the act void as to all; *Allen vs. Russell*, 50 Conn. 9 ; *Barrett vs. Nealson*, 119 Pa. 177.

Fourth. If judgments represented just debts, and were for the exact amount due, yet if given in violation of our statute, or the statute of 13 Eliz., they are void as to other creditors. They must not only be for a valuable consideration, but also be *bona fide*. If either is wanting they are void as to creditors; Kerr, Fraud, 199, 200, 201 ; Bump, Fraud. Conv. ; 1 Am. L. Cas. 43 ; *Tompkins et al. vs. Hunter, supra.*

Fifth. It is elementary law that the effect of fraud is the same whatever shape it assumes, whether legal or constructive fraud, or gross and actual deceit and imposition.

Sixth. If a purchaser of goods at sheriff's sale permits them

*But see s. c. 24 N. Y. Supp. 8, and 75 Hun 612.

to remain in the possession of the debtor, who continues to carry on the business substantially as before the sale, it is *prima facie* fraudulent, and when considered with all the other concurrent circumstances in the case is conclusive; *Clark vs. Saunders*, 6 Houst. 462; *Groff vs. Cooper, id.* 43; Kerr, Fraud 209, 210 n.; Benj. Sales 393; 1 Sm. L. Cas. 86; *Perry vs. Foster*, 3 Harring. 293. In the last case, the Court say it is not *per se* fraudulent, but other circumstances concurring, it is. There are in this case, many other circumstances concurring; Bump, Fraud. Conv. 36; *Waters vs. Comly*, 3 Harring. 117; *Helmrath vs. Mullin Company*, Del. Superior Court. The fact of insolvency is of itself conclusive under our statute in the opinion of the Court in the last two cases.

Seventh. If at the time the judgment was confessed, the creditor had knowledge of the debtor's insolvency or fraud, or if he had notice or knowledge of facts sufficient to put a man of ordinary prudence and experience in business upon inquiry, it would be an unlawful preference; Bump, Fraud. Conv. 201, 202, 203, 204, 494; Kerr, Fraud 237; *Le Gierse vs. Whitehurst*, 66 Tex. 244; s. c. 18 S. W. Rep. (Tex.) 510; *Commission Co. vs. Pearson, id.* 1048; *Hasting Malting Co. vs. Hellar*, 47 Minn. 71; *Tompkins vs. Hunter, supra.*

A waiver of the statutory provision that the goods should not be sold until thirty days after levy, was unlawful as against the other creditors. It is a well-settled principle that while a person may waive a statutory provision made for his own benefit, yet he cannot do so when in so doing he violates some principle of public policy or commits a fraud upon another; Sedgewick, Const. & Stat. Law 86.

A Court will not permit its record and process to be abused or used as instruments of fraud. An execution and its lien will be avoided by such conduct of a party to it which shows an improper use of the writ; Twynes Case, 1 Sm. L. Cas. 88; Bump, Fraud. Conv. 521 : Freem. Ex. §§ 35, 206; 1 Am. L. Cas. 43; *Springer vs. Johnson*, 3 Harring. 515; *Cloud vs. Lore*, 5 Houst. 163; *Stewart vs. Stoker*, 13 S. & R. 199; *Clark vs. Douglas*, 62 Pa. 408;

*Houston vs. Sutton*, 3 Harring. 37. It was held by this Court that a premature issuance of a writ of execution was an irregularity which the defendant might waive, *except where there was an allegation of fraud*; *Godwin vs. Godwin*, November Term, 1891.

The Court has also indirectly passed upon this question in cases where an execution issued upon a judgment payable in instalments and the instalments were not due. It was held that the Sheriff could not levy for those not due, notwithstanding the defendant made no apparent objection; *Roe vs. Platt*, 5 Harring. 429; *Roe vs. Gemmill*, 1 Houst. 16.

LORE, C. J. (charging the jury.)

In order that you might intelligently pass upon the three questions or issues, submitted for decision, evidence has been produced and arguments of counsel made upon both sides. It is for you now to answer each one of these questions upon that evidence, under the instructions of the Court, upon the questions of law involved.

We desire to say to you that it is the well settled law of this State, settled in the case of *Stockley vs. Horsey, Miller, etc.*, 4 Houst. 603, by the judgment of the Court of Errors and Appeals, after a careful and exhaustive review of all the cases on this subject, that an insolvent or failing creditor may give a bond and warrant, confess judgment, and prefer one or more creditors to others, if given in good faith to secure *bona fide* debts, even though such secured creditors receive thereunder a greater proportion of their respective debts than could be secured to all his creditors. Our statute does not prohibit such preferences.

By § 4, Ch. 132 of the Revised Code, "it is not preferences given in contemplation of insolvency or under failing circumstances which are prohibited, but preferences given under an assignment made for the benefit of creditors; it is the act of assignment and not merely his being in failing circumstances which brings the debtor within the scope of this Statute. Our law recognizes two distinct policies with respect to the liquidation of a failing debtor's

estate, and one is the policy of giving to a creditor the benefit of his diligence against other creditors. This policy obtains so long as the debtor keeps control of his property by not making an assignment; if no assignment be made, he may prefer an honest creditor, though he be in failing circumstances and though the preference in effect, covers all his property for the benefit of creditors; but the moment he makes an assignment, and not before, the policy of equal distribution among all the creditors prevails, and the debtor can give no preference either under the assignment or by any act done in contemplation of it. There is sound reason for treating the act of assignment as a test of the application of this statute to the debtor. It is a highly penal statute, and upon general principles, penal statutes are to be strictly construed, and especially should that rule apply to this statute, for if the fact of an assignment alone subjects the debtor to its provisions, and renders him punishable for a preference, we have a certain test of his liability which he himself could not misunderstand, and which could be easily proved against him. But if his being in failing circumstances is held to render the preference of a creditor illegal, and subjects the debtor to the penalty of the law, a very uncertain test of his liability would be created, depending upon a wide range of proof; and frequent injustice might be done to debtors who as often fail to appreciate their real situation, and honestly believe themselves to be solvent, when they are not solvent. On the whole, it is a sound policy of the statute, working the least injustice which avoids a preference only when given under or in contemplation of an assignment."

Thus the law not only recognizes, but favors and protects a preferred creditor, who in good faith has thus secured a just debt, although it may cover and absorb the entire property of the debtor.

Therefore, to avoid a preference given to a *bona fide* creditor, it must be given by an assignment " *eo nomine*," or by an instrument that is in fact an assignment, under cover of another form.

The law, then, gentlemen, clearly is that Jacob H. Topkis had the right to give Samuel Slessinger and David Abramson or either

of them such judgments as he did, if he was justly indebted to them or either of them in the sums named, and the judgment was honestly given to secure such debt, notwithstanding the fact he was insolvent or in failing circumstances.  In order to avoid these judgments you must be satisfied from the evidence in this case that in giving such judgments Jacob H. Topkis did not intend in good faith to secure honest debts, but intended or contemplated insolvency, securing them a larger share of his estate in view of insolvency or intended to hinder, delay or defraud his other creditors.

This brings us to the real issue in this case, *i. e.*, were these judgments confessed with a fraudulent intent?  For fraud vitiates every contract, and no man may invoke the law to enforce his fraudulent acts.

Fraud is never presumed; it must always be proved.  Your consciences should be satisfied that the facts proved admit of no other interpretation, but that the judgments were confessed with a dishonest intention on the part of both parties to them, to delay or prevent Topkis' other creditors in the recovery of their just debts; *Stockley vs. Horsey, Miller & Co.*, 4 Houst. 614.

Proof of fraud need not be express; it may be inferred from circumstances, but ought not to be presumed without either.  A jury ought to be satisfied from facts that there was a dishonest intention, and not to infer fraud merely because they have doubts of the fairness of the transaction, from the conduct and situation of the parties and the effects intended to be produced by · the act.  Something should be made to appear inconsistent with integrity, so as to admit of no reasonable interpretation, but meditated fraud (4 Pet. 295-297).  Both parties to the alleged act of fraud must concur in the illegal design.  The debtor may lawfully prefer one creditor to another with the direct intention of defrauding other creditors, but unless the preferred creditor receives the property with the same fraudulent design the contract is valid against other creditors who may be injured by the transaction; 8 Wheat. 238; 4 Houst. 614.

Applying the law thus laid down to the issues submitted to you :

Charge.

If you believe from the evidence in the case that in confessing these judgments to Slessinger and Abramson, Topkis intended insolvency, then your finding on the *first* issue should be that he contemplated insolvency, but if you believe that he intended thereby only to secure debts honestly due them, your finding should be that he did not contemplate insolvency.

In like manner, if you believe that thereby his intention being to attempt to secure to Slessinger and Abramson a greater proportion of their respective debts than he could pay to all his creditors, you should so find as to the second issue, but if you believe that thereby he only intended to secure debts honestly due them, your finding should be that he did not attempt such preference.

If you should in like manner believe that Topkis intended by the judgments to hinder, delay, or defraud his creditors, you should so find on the third issue, but if you should believe he thereby only intended to prefer in good faith, just debts, you should find then his purpose thereby was not to hinder, defraud or delay.  In other words if from the evidence which has been produced you are satisfied that the said bonds given to Slessinger and Abramson, on which judgments were entered and property sold, were not *bona fide* and for a just consideration, but given to prevent and hinder the collection of their just debts by other creditors, such bonds were fraudulent and therefore void.  It is for you to determine this fact from the evidence.  In fact, gentlemen, it is the single issue in this case for your determination.

If you so believe you may find as to Slessinger and Abramson on any or all of the issues, affirmatively as to one and negatively as to the other.

Your finding must be only upon the evidence before you in this case, and not from statements made by counsel on either side of what they proposed to prove, which was ruled out by the Court as inadmissible, nor are you to consider information had from any other source whatever.  You must divest yourselves of all prejudice.  Before you men of all conditions and creeds stand upon the plane of absolute equality.  Their rights are to be tried and deter-

mined only by the evidence produced in open court, and with which they are openly and fairly confronted, with full opportunity to meet, explain and refute. Any other course would be a travesty of justice, and a violation of your oaths.

*Verdict : " Yes" to each question submitted.*